PEOPLE v HURST

Docket No. 84939. Submitted April 16, 1986, at Detroit. Decided
October 21, 1986.

Charles A. Hurst was convicted following a bench trial in the
Recorder's Court for the City of Detroit of two counts of first-
degree criminal sexual conduct. The trial court, Michael J.
Talbot, J., sentenced defendant to two concurrent prison terms
of from forty to eighty years. Defendant appeals from the
convictions and sentences alleging that there was insufficient
evidence to show that he was armed with a weapon or any
article used or fashioned in a manner to lead the victim to
reasonably believe there was a weapon. Defendant also argues
that the trial court abused its sentencing discretion in depart-
ing from the ten-to-twenty-year minimum sentence range rec-
ommended under the sentencing guidelines.

The Court of Appeals *held:*

1. A rational trier of fact could conclude that the complain-
ant reasonably believed that defendant was armed with a
weapon when he forced her to submit to sexual penetration.
Defendant's convictions are affirmed.

2. A minimum sentence which is twice the highest minimum
sentence recommended by the sentencing guidelines does not
automatically constitute an abuse of sentencing discretion.

3. If defendant's forty-year minimum sentences mean that he
will spend the next forty years in prison, then the Court of
Appeals would find their consciences shocked by the sentences.
In order to determine precisely what the sentences entail, the
Court of Appeals vacated the defendant's sentences and re-
manded the case to the trial court for an evidentiary hearing
and resentencing. At such hearing, the prosecutor and the

REFERENCES

Am Jur 2d, Criminal Law §§ 535 *et seq.*

Am Jur 2d, Evidence §§ 320 *et seq.*

Am Jur 2d, Pardon and Parole §§ 77 *et seq.*

Validity of statutes prohibiting or restricting parole, probation, or
suspension of sentence in cases of violent crimes. 100 ALR3d 431.

See also the annotations in the Index to Annotations under Rape;
Weapons and Firearms.

Probation Department shall produce evidence as to the practices and policies of the Department of Corrections regarding parole eligibility. The Court of Appeals wants to know whether the Department of Corrections allows defendants who have been convicted of Proposal B offenses and sentenced to terms of years are to be considered for parole after serving the first ten years of their sentences. Further inquiry should be made as to whether there are any other differences accorded inmates who have been sentenced to life on a Proposal B offense as opposed to inmates who have been sentenced to lengthy terms of years on a Proposal B offense.

Convictions affirmed and the case remanded for further sentencing proceedings.

1. RAPE — EVIDENCE — USE OF WEAPON — CRIMINAL SEXUAL CONDUCT.

A defendant's conviction for first-degree criminal sexual conduct involving penetration and the use of a weapon may be affirmed where, although the complainant admitted that she never actually saw the defendant holding a gun, a rational trier of fact could conclude, based on the complainant's testimony, that the complainant reasonably believed that the defendant was armed with a weapon when he forced her to submit to sexual penetration (MCL 750.520b[1][e]; MSA 28.788[2][1][e]).

2. CRIMINAL LAW — SENTENCING — SENTENCING GUIDELINES — MINIMUM SENTENCES.

A minimum sentence which is twice the highest minimum sentence recommended by the sentencing guidelines does not automatically constitute an abuse of sentencing discretion.

3. CRIMINAL LAW — SENTENCING — PAROLE — LIFER LAW — PROPOSAL B.

Michigan's "lifer law" allows any prison inmate under a sentence of life or for a term of years, other than those who have been convicted of first-degree murder or of a major controlled substance offense, to be considered for parole after serving ten calendar years of his or her sentence; the electorate's approval of Proposal B in 1978 and the 1982 amendment of that statute modified the "lifer law" to the effect that inmates serving indeterminate sentences for any of the crimes enumerated in the statute are no longer eligible for parole until the minimum term is served less any time earned in disciplinary credits; Proposal B does not apply to life sentences (MCL 791.233b, 791.234[4], 800.33; MSA 28.2303[3], 28.2304[4], 28.1403).

*Frank J. Kelley*, Attorney General, *Louis J.*

*Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *Denise Green,* Assistant Prosecuting Attorney, for the people.

*Gerald S. Surowiec,* for defendant.

Before: M. J. KELLY, P.J., and SHEPHERD and C. W. SIMON,* JJ.

M. J. KELLY, P.J. Following a bench trial, defendant was convicted of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(e); MSA 28.788(2)(1)(e). He was sentenced to two concurrent prison terms of from forty to eighty years and now appeals from both his convictions and sentences as of right. We affirm his convictions but remand for further sentencing proceedings consistent with this opinion.

Defendant was charged with the commission of criminal sexual conduct involving penetration and the use of a weapon:

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> *   *   *
>
> (e) The actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon. [MCL 750.520b(1)(e); MSA 28.788(2)(1)(e).]

Defendant first argues that there was insufficient evidence to show that he was armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe there was a weapon. We disagree.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Complainant admitted that she never actually saw a gun. However, she believed her assailant had a gun because he shoved what "felt like a heavy metal-like object" into her side and asked her if she wanted to die. After the defendant was arrested, the police recovered a yellow-handled ratchet adapter near a pile of defendant's clothes in the area of the house where the assault took place. Based on the complainant's testimony, we believe that a rational trier of fact could conclude that the complainant reasonably believed that defendant was armed with a weapon when he forced her to submit to sexual penetration. See *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), reh den 407 Mich 1164 (1980), cert den 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980), and *People v Petrella,* 424 Mich 221; 380 NW2d 11 (1985). Defendant's convictions are therefore affirmed.

Defendant also argues that the trial court abused its sentencing discretion in departing from the ten-to-twenty-year minimum sentence range recommended under the sentencing guidelines. We are not persuaded that a minimum sentence which is twice the highest guidelines' recommended minimum sentence automatically constitutes an abuse of sentencing discretion. However, this case points out some of the problems that appellate judges face in fathoming the consequences of the sentences they are reviewing and we are thus reluctant to simply affirm the sentences here imposed. Uniformity is not the goal of sentence review but we must ask ourselves if all levels of disparity are acceptable.

Defendant was convicted of offenses which carry maximum sentences of life imprisonment. In *People v Crawford,* 144 Mich App 86; 372 NW2d 688 (1985), defendant was convicted of the same offense

and sentenced to a term of imprisonment of from 80 to 120 years. In upholding that sentence as not excessive, the panel in *Crawford* commented upon life and indeterminate sentences in the context of sentence review:

> From a defendant's standpoint in viewing length of time to be served, there is no sentence more severe than a life sentence. A sentence of 80 to 120 years is almost certain to be longer than a defendant's life. Consequently, the purpose of a 80- to 120-year sentence seemingly has to be to recognize the heinous nature of defendant's crime and to tell the public that such conduct will not be tolerated. [144 Mich App 89-90.]

We agree that in some cases a life term will prove a harsher sentence than a term of years. The drop-off is far from clear; what is apparent may not prove true. Although we do not wish to take a stand on whether *People v Crawford* was correctly decided, we suggest that from the perspective of James Crawford and contrary to the view expressed by this Court, a life sentence in that case would have been much less severe than the sentence imposed.

Michigan's "lifer law" allows any prison inmate under a sentence of life or for a term of years, other than those who have been convicted of first-degree murder or of a major controlled substance offense, to be considered for parole after serving ten calendar years of his or her sentence. MCL 791.234(4); MSA 28.2304(4). In 1978, the electorate approved "Proposal B," now codified at MCL 791.233b; MSA 28.2303(3), which modified the lifer law. Inmates serving indeterminate sentences for any one of more than eighty crimes enumerated in the statute are no longer eligible for parole until the minimum term is served less any time earned in disciplinary credits under MCL 800.33; MSA

28.1403.[1] In *People v Johnson,* 421 Mich 494; 364 NW2d 654 (1984), the Supreme Court expressly ruled that Proposal B does not apply to life sentences. Thus, if inmates James Crawford and Charles Hurst had received life sentences, they would each have been eligible for parole consideration after serving only the first ten years of their sentences. Under the sentences actually imposed, Crawford abides eighty years and Hurst forty years, minus whatever time they earn in disciplinary credits, before their names appear on a list of candidates for parole consideration.

To repeat, the actual minimum term which must be served under Proposal B may now be reduced by time earned in disciplinary credits. The amount by which a sentence may be reduced under MCL 800.33; MSA 28.1403 can be significant,[2] further complicating the attempt to pre-

---

[1] As originally approved and codified, Proposal B required that the full minimum term be served undiminished by reductions for "good time, special good time, or special parole." In 1982, the statute was amended so as to allow for minimum sentence reductions according to disciplinary credits earned.

[2] The statute provides a scheme whereby the longer the sentence to be served, the more days per month may be earned in good time:

(2) Except as provided in subsections (3), (4), and (5), a convict who does not have an infraction of the rules of the prison or a violation of the laws of this state recorded against him shall receive a reduction from his sentence as follows:

(a) During the first and second years of his sentence, 5 days for each month.

(b) During the third and fourth years, 6 days for each month.

(c) During the fifth and sixth years, 7 days for each month.

(d) During the seventh, eighth, and ninth years, 9 days for each month.

(e) During the tenth, eleventh, twelfth, thirteenth, and fourteenth years, 10 days for each month.

(f) During the fifteenth, sixteenth, seventeenth, eighteenth, and nineteenth years, 12 days for each month.

(g) From and including the twentieth year, up to and including the period fixed for the expiration of the sentence, 15 days for each month. [MCL 800.33; MSA 28.1403.]

cisely calculate the sentences we are reviewing. Moreover, Proposal B inmates may also benefit from early releases under the Prison Overcrowding Emergency Powers Act, MCL 800.71 *et seq.;* MSA 28.1437 (1) *et seq.,* although we have expressly held that sentencing courts may not consider this possibility as a factor in determining individual sentences. See *People v Humble,* 146 Mich App 198; 379 NW2d 422 (1985), *People v Lundy,* 145 Mich App 847; 378 NW2d 622 (1985), and *People v Fleming,* 142 Mich App 119, 125; 369 NW2d 499 (1985).

Remarking on this confusion and uncertainty is an article published in the Detroit Free Press on June 23, 1985, section B, page 5, which suggests that statutes and case law are not strictly adhered to by the Department of Corrections which follows a different star. Apparently, an inmate, who has been convicted of Proposal B offenses and sentenced to a minimum and maximum term of years, is nevertheless considered by the Department of Corrections for parole after serving only ten years of the actual minimum sentence, unless that inmate has been convicted of first-degree murder or a major controlled substance offense. This, if true, conflicts with the codification of Proposal B and the Supreme Court's opinion in *People v Johnson, supra.*

Against this backdrop, we find ourselves having to decide whether Hurst's sentences of from forty to eighty years are excessive. If defendant's forty-year minimum sentences mean that he will perforce spend the next forty years of his life behind bars, then our consciences are shocked. If a long termer must serve forty or eighty calendar years while his lifer counterpart, eligible for parole consideration in ten years, serves considerably less, then what is endangered is the entire predicate for

the sentencing guidelines' endeavor to narrow the disparity among sentences.

We are indecisive about whether to affirm defendant's sentences because of the uncertainty about what they precisely entail. We agree, however, with the observation made in *People v Fleming, supra*, p 126, that the courts of this state "should be mindful of the ultimate effect" of any sentence fashioned and, we would add, reviewed. For the lack of an alternative remedy, we vacate defendant's sentences and remand this case to the trial court for an evidentiary hearing and resentencing. At the hearing on remand, the prosecutor and the Probation Department shall produce evidence as to the practices and policies of the Department of Corrections regarding parole eligibility. In particular, we want to know whether the Department of Corrections allows defendants who have been convicted of Proposal B offenses and sentenced to terms of years to be considered for parole after serving the first ten years of their sentences. Further inquiry should be made as to whether there are any other differences accorded inmates who have been sentenced to life on a Proposal B offense as opposed to inmates who have been sentenced to lengthy terms of years on a Proposal B offense. It's time we had a record to review of how the Department of Corrections actually implements a sentence order, so that our review of those sentences will have some meaning.

The Attorney General is responsible for the supervision of all prosecutors in this state. MCL 14.30; MSA 3.183, *In re Watson*, 293 Mich 263; 291 NW 652 (1940), and *People v Karalla*, 35 Mich App 541; 192 NW2d 676 (1971), lv den 386 Mich 765 (1971). We therefore direct the Attorney General to assist the Wayne County Prosecutor at the hearing on remand in whatever way necessary to

facilitate the production of information relevant to the sentencing issues. We further invite the Attorney General to appear in this action as amicus curiae for the Department of Corrections.

Following the hearing on remand, the trial court shall resentence the defendant and articulate on the record its reasons for choosing the sentences imposed.[3] Hearing on remand shall be commenced within sixty days and concluded with dispatch.

Defendant's convictions are affirmed and the case is remanded for further sentencing proceedings as described herein. We retain jurisdiction.

[3] The trial court described the guidelines for this crime as "woefully inadequate." He also took a broadside at the guidelines:

> Why they're there is, I suppose, for others to explain. I mean that in the sense that apparently either someone doesn't have enough faith in the judges of this state in terms of their sentences, or whether they want all of us to just in effect march in a like step.

We answer the trial court's rhetorical question this way. We have far more confidence in the trial judge's fashioning a proper sentence than in our own ability to review it. However, we are irrevocably committed to the proposition that judges make mistakes. Not only Appeals Court Judges—all judges. If we are properly committed to reduce or minimize sentence disparity, and we think we are, then we have to insist that the trial judge provide a reasonably specific explanation as to how the guidelines are inadequate or why the sentence in a particular case should not reflect the sentencing practices of the state's trial judges. It appears to us that this is such a case.