## PEOPLE v HARDEN

Docket No. 94743. Submitted December 16, 1987, at Lansing. Decided February 1, 1988. Leave to appeal applied for.

Carey Harden, also known as Harden-Bey and originally charged with two counts of open murder, two counts of felony murder and one count of armed robbery arising out of one criminal episode, was convicted of two counts of second-degree murder and one count of armed robbery following a jury trial in Jackson Circuit Court. A second jury was impaneled and it convicted defendant on a supplemental charge of being an habitual offender, third offense. The trial court, Gordon W. Britten, J., sentenced defendant, who was a prison inmate at the time he committed the offenses in this case, to three concurrent terms of 90 to 150 years in prison, to be served consecutively to any sentence defendant was already serving. The trial court also recommended that defendant never be paroled. Defendant appealed, raising several issues.

The Court of Appeals *held:*

1. The delay in commencing trial caused by the prosecutor's seeking an interlocutory appeal to enforce a subpoena against a witness was not delay chargeable to the prosecutor under the 180-day rule.

2. The trial court did not abuse its discretion in admitting evidence of two $20 bills found in defendant's cassette tape recorder two days after the murders. Prisoners are not allowed to have cash and are instead required to use tokens drawn on their accounts. The trial court initially granted a motion to suppress evidence of the money when defendant had contended that he obtained the money illicitly from a fellow prisoner.

References

Am Jur 2d, Evidence § 370.

Am Jur 2d, Homicide § 549.

Am Jur 2d, Trial § 109.

Propriety and prejudicial effect of federal judge's expressing to jury his opinion as to defendant's guilt in criminal case. 7 ALR Fed 377.

Admissibility, weight, and sufficiency of blood-grouping tests in criminal cases. 2 ALR4th 500.

However, upon reconsideration, the prosecutor had presented evidence contradicting defendant's claim.

3. The trial court did not err in admitting blood-typing evidence concerning blood found on the fingernails of one of the victims. Blood-typing evidence showing that an accused is included within a large class of possible perpetrators, while not sufficient by itself to convict the defendant, has some incremental probative value which a jury may consider along with other evidence. The blood-typing evidence in this case, while not dispositive of the issue of defendant's guilt, was relevant in that it was consistent with defendant's guilt and did exclude another suspect.

4. References by the prosecutor at closing argument to defendant's fez, to which defendant objected on the ground of relevancy rather than improper argument regarding defendant's Islamic faith, do not require a reversal of defendant's conviction. The references were made in a line of argument suggesting that a Navy medal missing from the scene of the crimes was taken by defendant so he could wear it with his religious garb.

5. Any error in the trial court's omission of CJI 16:2:01(5) from the instructions on first-degree murder was harmless since defendant was convicted of second-degree murder, the instructions for which defendant conceded were accurate and complete, and CJI 16:2:01(5) is repeated in CJI 16:3:01(5), which was given as part of the instructions on second-degree murder.

6. Defendant failed to object to the omission of CJI 4:2:02(6) and (7) and thus did not preserve for appellate review his claim that their omission was erroneous.

7. Defendant did not object to, and in fact requested, a different jury for trial on the habitual-offender charge. Thus, his claim that he was subjected to double jeopardy on account of the different juries is without merit.

8. A comment made by the trial court at sentencing that defendant was actually guilty of first-degree murder was not improper since the evidence presented at trial would have supported a conviction for felony murder.

9. The sentences imposed on defendant were not excessive in light of the heinous nature of the offenses committed by defendant and the fact that he was a prison inmate at the time of the offenses.

Affirmed.

1. CRIMINAL LAW — 180-DAY RULE — INTERLOCUTORY APPEALS.

Delay in commencing trial caused by the prosecutor's pursuing

an interlocutory appeal in his efforts to enforce a subpoena against a witness is not chargeable to the prosecutor for purposes of the 180-day rule.

2. EVIDENCE — APPEAL.

A trial court's decision to admit or exclude evidence is a matter for the sound discretion of the trial judge and will not be overturned on appeal absent an abuse of discretion.

3. CRIMINAL LAW — EVIDENCE — BLOOD-TYPING EVIDENCE.

Blood-typing evidence showing that the accused is included within a class of possible perpetrators has some incremental probative value and is admissible.

4. CRIMINAL LAW — SENTENCING — JUDICIAL COMMENTS.

A comment made by a trial court at sentencing that a defendant convicted by a jury of second-degree murder and armed robbery arising out of one criminal episode was actually guilty of first-degree murder was not improper where the evidence at trial would have supported a conviction for felony murder.

5. CRIMINAL LAW — SENTENCING — INDETERMINATE SENTENCES — "ANY TERM OF YEARS".

An indeterminate sentence "for any term of years" need not be fashioned with consideration of a defendant's life expectancy at the time of sentencing and thus may have a minimum term which exceeds the defendant's life expectancy.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph S. Filip,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the people.

*James R. Rinck,* for defendant.

Before: HOOD, P.J., and SAWYER and T. E. JACKSON,* JJ.

SAWYER, J. Defendant was convicted, following a jury trial, of two counts of second-degree murder, MCL 750.317; MSA 28.549, and one count of armed robbery, MCL 750.529; MSA 28.797. There-

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

after, a second jury was impaneled which convicted defendant as a third felony offender under the habitual-offender statute. MCL 769.11; MSA 28.1083. The trial court thereafter sentenced defendant to three concurrent terms of 90 to 150 years in prison on the three counts, with those concurrent sentences to be served consecutively to any sentence defendant was then serving. The judgment of sentence also recommended that defendant never be paroled. Defendant appeals and we affirm.

Defendant's convictions arise out of the brutal robbery and murder of Edward and Janet Mroz on the afternoon of June 4, 1985, in their residence in Jackson County. Briefly, the victims' bodies were found by their daughter, Rhonda, when she returned from work on the afternoon of June 4. She found her stepfather lying in his bedroom, dead after having been stabbed eight times in the chest. The house was ransacked and some of Rhonda's jewelry was gone, as well as a Navy good-conduct medal earned by her brother, Scott MacKenzie. In addition, some $200 was missing from a bank envelope stored in a kitchen bookcase drawer. The police were summoned and investigators later found Mrs. Mroz's body in the bathtub, with a knife protruding from her chest.

On appeal, defendant raises several issues, which we consider in a slightly different order than presented by the parties.

I

We first consider defendant's argument that the trial court lacked jurisdiction to try defendant due to a violation of the 180-day rule. Defendant's trial commenced 238 days after arraignment. On appeal, defendant admits that forty-three days were

attributable to him as a result of a motion to suppress. However, defendant argues that the remaining 195 days exceeds the jurisdictional time limit and that any delay is chargeable to the prosecution. Specifically, defendant charges the delay to the prosecution as a result of the prosecutor's taking an interlocutory appeal to the Supreme Court concerning an issue relating to a journalist who was unwilling to cooperate with the prosecutor in testifying. In fact, the Supreme Court, on October 25, 1985, issued a stay of proceedings pending the resolution of that collateral litigation concerning the witness. (Supreme Court Docket No. 77495).

This Court recently rejected the contention that delay caused by the prosecutor's pursuing an interlocutory appeal should be chargeable to the prosecutor for purposes of the 180-day rule. *People v Bradshaw,* 163 Mich App 500; 415 NW2d 259 (1987). We see no reason to disagree with the *Bradshaw* decision and, therefore, hold that the delay caused by the prosecutor's seeking an interlocutory appeal in the case at bar to enforce the subpoena against the journalist witness is not delay chargeable to the prosecutor under the 180-day rule. Accordingly, the 180-day rule was not violated in the case at bar.

II

We next consider defendant's argument that the trial court improperly admitted into evidence the two $20 bills found in defendant's cassette tape recorder two days after the murders. At the time of the murders, defendant was an inmate at the minimum security facility in Jackson and had committed the murders while on a work program outside the prison. Apparently his absence was not

noticed as he returned to prison that evening. However, two days later two $20 bills were found hidden in his cassette recorder. Prisoners are prohibited from possessing United States currency; rather, they must take prison tokens drawn against their prisoner accounts for any transaction in prison.

Before trial, the trial court granted a motion to suppress evidence of the two bills in light of defendant's claim that he had come into possession of the currency through other illicit means from a fellow prisoner. However, at trial the prosecutor presented additional evidence which tended to contradict defendant's explanation of how he had come into possession of the money. At that time, the trial court reversed itself and admitted the two bills into evidence.

A trial court's decision to admit or exclude evidence is a matter for the sound discretion of the trial judge and this Court will not overturn such rulings in the absence of an abuse of discretion. *Guider v Smith,* 157 Mich App 92; 403 NW2d 505 (1987). After a review of the record, we can find no abuse of discretion by the trial court in determining that the bills were admissible.

III

Next, we consider whether the trial court erred in admitting the electrophoretic evidence obtained concerning the blood scrapings from the fingernails of the female victim. The scrapings from Mrs. Mroz's fingernails indicated that the blood under her fingernails was of a genotype consistent with defendant, his accomplice, and the victim herself. The blood was inconsistent with that of Mr. Mroz as well as another individual who, at one point, had been considered a suspect in the

slayings. Defendant argues that, because the blood scrapings would be consistent with approximately sixty percent of the general population, the link to defendant was too tenuous to warrant admission. We disagree.

The recent case of *People v Finley,* 161 Mich App 1; 410 NW2d 282 (1987), is directly on point. In *Finley,* this Court held that blood-typing evidence showing that the accused was included within a large class of possible perpetrators, while not sufficient by itself to convict the defendant, does have some incremental probative value which the jury may consider along with other evidence. *Id.* at 12. We agree. The blood-typing evidence in the case at bar, while certainly not dispositive of the issue of defendant's guilt, was relevant in that it was consistent with defendant's guilt and did exclude an alternative suspect. Moreover, its relevancy was heightened in light of the fact that defendant was the only suspect who had scratches on his left forearm after the incident. We believe that the trial court properly exercised its discretion in permitting the jury to consider this evidence.

IV

Next, we consider defendant's argument that he was deprived of a fair trial by the prosecutor's references to defendant's Islamic name and to the fact that defendant wore a fez. Defendant also objects to other comments made by the prosecutor during closing argument. However, there were no objections by defendant to the prosecutor's closing argument, with the exception of an objection to the reference to defendant's fez, with that objection being to relevancy rather than to improper argument as a comment on defendant's religion.

Accordingly, defendant's argument before this Court has not been properly preserved for appeal. *People v Solak,* 146 Mich App 659; 382 NW2d 495 (1985).

With respect to the one comment which is arguably preserved for appeal, the reference to defendant's fez, we do not see that as an impermissible comment on defendant's religious preferences. Rather, the prosecutor commented on the fez as a suggestion that defendant had stolen the Navy good-conduct medal which was missing from the victim's house for the purpose of wearing the medal with his religious garb. In any event, defendant did not object to the reference on the basis that it was an improper comment on his religion. Accordingly, we find no basis for reversing defendant's conviction based upon plaintiff's closing argument.

v

Defendant next argues that he was denied a fair trial by the trial court's deletion of paragraph 5 of CJI 16:2:01 from the instructions on first-degree murder and paragraphs 6 and 7 of CJI 4:2:02, concerning direct and circumstantial evidence.

With respect to the deletion of CJI 16:2:01(5), we believe that any error in the deletion of this instruction was harmless. Firstly, we note that that instruction is part of the instructions for first-degree murder. Defendant was not convicted of first-degree murder; rather, he was convicted of second-degree murder and he concedes that the second-degree murder instructions were accurate and complete. Secondly, the language of CJI 16:2:01(5) is repeated in CJI 16:3:01(5), which is given as part of the instructions on second-degree murder. CJI 16:3:01(5) was given to the jury in the

second-degree murder instructions. Thus, the jury did hear the substance of that instruction at least once. For these reasons, we conclude that any deletion of the instruction as part of the first-degree murder instructions was, at most, harmless error. MCR 2.613(A); *People v Robinson,* 386 Mich 551, 562-563; 194 NW2d 709 (1972).

With respect to the omission of CJI 4:2:02(6) and (7) defendant failed to object at trial. Accordingly, the issue has been waived for appellate review. *People v Burgess,* 153 Mich App 715; 396 NW2d 814 (1986).

## VI

Defendant next argues that he was subjected to double jeopardy when the trial court allowed him to be tried on the supplemental information before a different jury in a separate proceeding. However, not only did defendant not object to the separate trial on the habitual-offender charge but he had expressly requested the separate trial and new jury on the supplemental charge. Accordingly, this issue is not properly before us. See *People v Walters,* 412 Mich 879; 313 NW2d 283 (1981).

## VII

Defendant's final issue is that his sentences of 90 to 150 years in prison should be vacated because of improper comments by the sentencing court and because the sentences are excessive. We disagree.

The allegedly improper comment by the sentencing court was that defendant was actually guilty of first-degree murder despite his conviction for second-degree murder. However, the trial court's comment appears to arise from letters it had received

from various jurors after the delivery of the verdict. Those letters indicated that the jury would have convicted defendant of felony murder had the jurors not misunderstood the relative severity of second-degree murder and felony murder. In any event, the trial court's comment is factually correct inasmuch as the jury found that defendant committed both second-degree murder and armed robbery. Thus, the jury's conviction of defendant of second-degree murder, rather than first-degree felony murder, was inconsistent with its conviction for armed robbery. In light of the armed robbery conviction, the jury's verdict that defendant was guilty of second-degree murder rather than felony murder can only be explained by reference to jury confusion or jury leniency. Thus, the trial court's reference to defendant's having actually committed first-degree murder was gratuitous and, in any event, accurate.

With respect to defendant's claim that his 90- to 150-year sentences were excessive, nothing could be further from the truth. In this regard, the police report containing a transcript of codefendant Herbert Studdard's confession is enlightening. In his confession, Studdard describes how defendant crawled in the high grass along the roadside, skulked behind a tree, where he lay in wait for a chance to invade the victims' house. Defendant mistook a departing visitor for the lady of the house and intended to steal in unnoticed. Unfortunately, defendant surprised Mrs. Mroz, who was then enjoying a week-long vacation from her work as a switch-equipment repairwoman at Michigan Bell. Studdard related that defendant "had her on her knees in the kitchen," and that she begged defendant to spare her life. According to Studdard, she repeatedly indicated that there was money in her purse and a half tank of gas in

the car outside. Defendant herded her into the bedroom and told her to "shut up."

Shortly thereafter Mr. Mroz entered the house, which he found ransacked, and called his wife's name. As he passed down the hallway, defendant sprang from inside the bathroom and pursued the man to his own bedroom, where he stabbed him repeatedly. Defendant then ran to the bathroom and cavalierly remarked, "come on, man, that's like murder." Studdard left the bathroom just in time to see Mr. Mroz dying on his bed. Defendant again entered the bathroom and slew Mrs. Mroz after a short and desperate struggle. Defendant then quit the bathroom and remarked, "come on, man, that's murder too. I left the knife in the bitch." Defendant left the carnage for discovery by the victims' daughter.

The Studdard account is consistent with the proofs adduced at trial and the sentencing court presumably had full cognizance of what defendant's crimes actually involved.

We would, however, be remiss in our duties if we did not take note of a recent split decision of this Court which, if applied to the case at bar, would mandate a vacation of defendant's sentences. In *People v Oscar Moore,* 164 Mich App 378; 417 NW2d 508 (1987), after a long and tortured construction of the applicable statutes, the Court concluded that a sentence of one hundred to three hundred years in prison on a first-degree criminal sexual conduct conviction was invalid because it would be impossible for the defendant to serve the minimum term and that a "term of years" sentence must be less than life in prison. Thus, the majority judicially amended those statutes to provide that a term-of-years sentence could not have a minimum term which exceeds a defen-

dant's life expectancy. *Moore, supra,* p 392. Nowhere in the statute does any reference to taking into account a defendant's life expectancy in setting a minimum sentence appear. Thus, the majority in *Moore* read into the statute something which did not exist. See Const 1963, art 3, § 2 (separation of powers).

However, we cannot ourselves fully describe the flaws of the *Moore* decision as well or as articulately as did Judge TAHVONEN in his dissent in *Moore.* We adopt and wholeheartedly embrace the learned jurist's dissenting opinion.

In the final analysis, the sentences in the case at bar of 90 to 150 years cannot under any stretch of the imagination be considered excessive in light of the heinous nature of the offenses committed by defendant, particularly considering that he was an inmate in a correctional facility at the time of the crimes. It was clearly the intent of the sentencing judge that defendant never again set foot outside the walls of prison. We find no fault with that decision.

Affirmed.