PEOPLE v COOPER

Docket No. 98282. Submitted February 11, 1988, at Detroit. Decided April 18, 1988.

Terry L. Cooper was convicted of second-degree murder, following a bench trial in Recorder's Court of Detroit, Leonard Townsend, J. The trial court permitted the prosecution to admit into evidence the preliminary examination testimony of a witness who, at trial, refused to testify on the basis of the exercising of the privilege against self-incrimination. The trial court sentenced defendant to a prison term of from one hundred to two hundred years. Defendant appealed.

The Court of Appeals held:

1. The witness, by refusing to testify on the basis of self-incrimination, was unavailable to testify. Since the witness had been subjected to cross-examination at the preliminary examination, the use of the preliminary examination testimony did not deny defendant his constitutionally protected right to confrontation.

2. A trial judge is not statutorily precluded from giving a sentence for a term of years which exceeds the life expectancy of the defendant. The sentence imposed in the present case does not shock the conscience of the Court.

Affirmed.

M. J. KELLY, J., dissented. He was shocked by the length of the sentence and would remand for resentencing.

1. WITNESSES — CRIMINAL LAW — FORMER TESTIMONY — OPPORTUNITY TO CROSS-EXAMINE — REFUSAL TO TESTIFY.

Preliminary examination testimony of a witness is admissible in lieu of the actual testimony of the witness where the witness is

REFERENCES

Am Jur 2d, Criminal Law §§ 542, 606.

Am Jur 2d, Trial §§ 4 et seq.

Am Jur 2d, Witnesses §§ 28 et seq.

Admissibility or use in criminal trial of testimony given at preliminary proceeding by witness not available at trial. 38 ALR4th 378.

Witness' refusal to testify on ground of self-incrimination as justifying reception of evidence of prior statements or admissions. 43 ALR3d 1413.

unavailable at trial and the defense had an adequate opportunity to examine the witness at the preliminary examination; a witness who refuses to testify at trial on the basis of the exercise of the privilege against self-incrimination is deemed to be unavailable (MCL 768.26; MSA 28.1049; MRE 804[b][1]).

2. CRIMINAL LAW — SENTENCING — INDETERMINATE SENTENCES — "ANY TERM OF YEARS".

An indeterminate sentence "for any term of years" need not be fashioned with consideration of a defendant's life expectancy at the time of sentencing and thus may have a minimum term which exceeds the defendant's life expectancy.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

*Patricia S. Slomski,* for defendant.

Before: M. J. KELLY, P.J., and H. HOOD and M. WARSHAWSKY,* JJ.

H. HOOD, J. Following a bench trial, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, arising out of an incident in which the victim, Carolyn Williams, was burned to death in a Detroit alley. Defendant was sentenced to a term of imprisonment of from one hundred to two hundred years and appeals as of right.

The principle testimony regarding the incident came from the trial testimony of Tamika Williams and defendant and the preliminary examination testimony of Charmin Collier which was read into evidence in place of her actual testimony. Tamika Williams testified that, at approximately 6:00 P.M. on March 20, 1986, she looked out of her apart-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ment window and saw defendant and Collier in the alley with Carolyn Williams. Carolyn Williams was tied up. She saw either defendant or Collier hit Carolyn Williams over the head, but she could not tell which of the two struck the actual blow. Then, she saw Carolyn Williams on fire and defendant and Collier running away. Again, she could not tell which of the two actually lit the fire.

When Collier was called to the stand, she answered one question, then stated she wished to exercise her Fifth Amendment privilege against self-incrimination. The court declared her unavailable and allowed the prosecution to have Collier's preliminary examination testimony read into the record. At the preliminary examination, Collier testified that on the date in question she and Carolyn Williams were at Collier's apartment, drinking and watching television. Defendant came over, and Collier left to buy some beer. When she returned, she discovered defendant and Williams naked in Collier's bedroom. Williams' hands were tied, and she was bleeding from the head. Defendant made Collier sit and watch as he had oral and genital sex with Williams. When Collier tried to help, defendant stopped her. Defendant also repeatedly asked Williams where her money was. When defendant was finished, he took Williams to the alley near an abandoned car and hit her over the head with a piece of concrete. At this point, Collier could watch no longer, so she ran a short distance down the road. When she looked toward the alley again, she saw Williams on fire near or in the abandoned car. She later saw defendant throw Williams' clothing over a fence.

Defendant testified that, although he was at Collier's house earlier in the day, at 6:00 P.M. he was at his brother's house, where he spent the

night. Defendant denied having sex with Williams or setting her on fire.

Defendant was originally charged with felony murder. The court found that both defendant and Collier were present when Carolyn Williams was burned. The court then determined that, even if Collier actually lit the fire, defendant could still be convicted of murder on an aiding and abetting theory. The court gave defendant the benefit of the doubt as to the robbery and rape of Williams and found defendant not guilty of felony murder, but guilty of second-degree murder.

At sentencing, defendant gave a different account of the events of the day than he had given at trial. He stated that, when Collier and Williams entered Collier's house, Collier told him confidentially that Williams had money and that Collier wanted it. While defendant danced with Williams, one Antonia Brown went through Williams' purse, but found no money. Williams then told defendant she wanted to have sexual intercourse with him, so defendant complied. According to defendant, Collier then bound Williams, dragged her into the alley, and set her on fire. The court then stated that it believed that defendant and Collier both committed the act of setting Williams on fire and that the fact that each implicated the other did not exonerate either, but, rather, indicated that both were guilty. The court then sentenced defendant to a term of imprisonment of from one hundred to two hundred years.

On appeal, defendant first claims that he was denied his right to confront Collier, US Const, Am VI; Const 1963, art 1, § 20, when the court permitted the prosecution to have Collier's preliminary examination testimony read into evidence in lieu of her actual testimony. This claim has no merit. MRE 804(b)(1) states:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

In addition, MCL 768.26; MSA 28.1049 states:

Testimony taken at an examination, preliminary hearing, or at a former trial of the case, or taken by deposition at the instance of the defendant, may be used by the prosecution whenever the witness giving such testimony can not, for any reason, be produced at the trial, or whenever the witness has, since giving such testimony become insane or otherwise mentally incapacitated to testify.

For purposes of MCL 768.26; MSA 28.1049, asserting one's Fifth Amendment privilege against self-incrimination makes the witness "unavailable." *People v Pickett,* 339 Mich 294, 305-308; 63 NW2d 681 (1954), cert den 349 US 937; 75 S Ct 781; 99 L Ed 1266 (1955); *People v Castaneda,* 81 Mich App 453, 458-59; 265 NW2d 367 (1978). This Court has, pursuant to MRE 804(b)(1) and MCL 768.26; MSA 28.1049, held on many occasions preliminary examination testimony admissible in lieu of the actual testimony of the witness where the witness is unavailable. These rulings have rejected confrontation clause challenges. See *People v Dusterwinkle,* 3 Mich App 150; 141 NW2d 719 (1966), lv den 378 Mich 722 (1966); *People v Doverspike,* 5 Mich App 181, 189-191; 146 NW2d

85 (1966), aff'd 382 Mich 1 (1969); *People v Havey,*
11 Mich App 69, 76-78; 160 NW2d 629 (1968), lv
den 381 Mich 756 (1968); *People v Walter Moore,*
78 Mich App 294; 259 NW2d 351 (1977); *People v*
*Edgar,* 113 Mich App 528, 535-536; 317 NW2d 675
(1982); *People v Whetstone,* 119 Mich App 546,
552-553; 326 NW2d 552 (1982); *People v Gross,* 123
Mich App 467, 470; 332 NW2d 576 (1983), lv den
417 Mich 1100.36 (1983); *People v Morris,* 139
Mich App 550, 554-556; 362 NW2d 830 (1984). See
also *Havey v Kropp,* 458 F2d 1054 (CA 6, 1972).
Whether defense counsel cross-examined the wit-
ness at the preliminary examination was a princi-
ple factor in these cases. The cases in which pre-
liminary examination testimony has been held
inadmissible involved instances where the prose-
cutor did not use due diligence in trying to locate
the witness so that the witness could testify at
trial. See *People v Herman Brown,* 38 Mich App
69; 195 NW2d 806 (1972); *People v Williams #2,*
45 Mich App 630, 636-638; 207 NW2d 180 (1973).

In the instant case, defense counsel did cross-
examine Collier at the preliminary examination;
the record reveals that the cross-examination took
up seven pages of the transcript. Thus, there was
no error in using Collier's preliminary examina-
tion testimony.

Next, defendant claims his sentence of from one
hundred to two hundred years was an abuse of
discretion and should shock the conscience of this
Court under *People v Coles,* 417 Mich 523, 550;
339 NW2d 440 (1983). The guidelines recom-
mended a minimum sentence of ten years to life.
Resolution of this issue requires an analysis of two
recent decisions. In *People v Oscar Moore,* 164
Mich App 378; 417 NW2d 508 (1987), a panel of
this Court held that a sentence of from one hun-
dred to three hundred years for armed robbery

was essentially a life sentence without parole and that, because only first-degree murder and certain controlled substance crimes had a mandatory sentence of life imprisonment, the one hundred to three hundred year sentence was invalid. The panel held that a term-of-years sentence must not have a minimum term which exceeds the defendant's life expectancy. *Moore, supra,* pp 387-392. In *People v Harden,* 166 Mich App 106; 420 NW2d 136 (1988), another panel of this Court adopted Judge TAHVONEN's dissent in *Moore* and stated that, in holding that a term-of-years sentence could not have a minimum term which exceeded a defendant's life expectancy, the *Moore* panel read into the sentencing statutes something which did not exist. *Harden, supra,* pp 116-117. We agree with the view expressed in Judge TAHVONEN's dissent in *Moore* and in the *Harden* decision that a sentence such as the one at bar is not invalid. We feel that a reconciliation of Proposal B (MCL 791.233b[x]; MSA 28.2303[3][x]) and the "lifer law" (MCL 791.234[4]; MSA 28.2304[4]) is better left for the Legislature.

We must nevertheless determine whether defendant's sentence shocks our conscience. We feel it does not. While a one hundred-year minimum sentence does indeed border on unrealistic, we are not prepared to say that our conscience is shocked under the circumstances of this case. We feel that the vicious and gruesome actions involved in this crime warrant the sentence imposed.

Affirmed.

M. WARSHAWSKY, J., concurred.

M. J. KELLY, P.J. *(dissenting)*. Judge HOOD's opinion points out the reaction of society or hu-

manity to crime. I do not think we can assess the emotional impact on our human sensibilities to measure whether our consciences are shocked under the *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), standard. The last thousand or so murders I have reviewed on appeal were each a different shock and one a more consummate revulsion from man's inhumanity to man than the next. I never met a murderer I liked.

I do not delude myself that sentences, no matter how long, or for eternity, or for execution, have any measurable deterrent effect. Therefore, the question is, do judges try for a reasonably consistent sentencing alternative or do they assume the mantle of the Almighty and pretend to remedy the criminal justice system's breakdown in coping with crime by grandstanding ad hoc on gross numbers? I continue to endorse the majority opinion in *People v Oscar Moore,* 164 Mich App 378; 417 NW2d 508 (1987). This state and this country prove daily that crime is always with us. Impossible sentences are not going to repeal reality. I disagree with the panel's subscribing to *People v Harden,* 166 Mich App 106; 420 NW2d 136 (1988), and suggest that a firing squad would be a more pristine alternative. What good are sentencing guidelines if random aberrant sentences are not struck down? For my part I will say my conscience is shocked as it was in *People v Oscar Moore; People v Guevara,* 159 Mich App 542; 407 NW2d 38 (1987) (KELLY, J., dissenting), *People v Hughes,* 160 Mich App 117; 407 NW2d 638 (1987) (KELLY, J., dissenting), *People v Crawford,* 161 Mich App 77; 409 NW2d 729 (1987) (KELLY, J., dissenting), and *People v Sanders,* 163 Mich App 606; 415 NW2d 218 (1987).

I would remand for resentencing.