PEOPLE v MIXON

PEOPLE v WILLIAMS

Docket Nos. 95579, 95720. Submitted April 21, 1988, at Detroit. Decided August 2, 1988.

Following a joint jury trial in Detroit Recorder's Court, Carlton Mixon and Annie Lee Williams were each convicted of kidnapping and extortion. Defendant Mixon was additionally convicted of unarmed robbery. The trial court, Michael J. Talbot, J., sentenced defendant Mixon to concurrent prison terms of ten to fifteen years for unarmed robbery, one hundred to two hundred years for kidnapping, and thirteen to twenty years for extortion. Defendant Williams was sentenced to concurrent prison terms of forty to eighty years for kidnapping and thirteen to twenty years for extortion. Both defendants appealed.

The Court of Appeals consolidated the appeals and *held:*

1. Defendant Mixon, by not moving for the disqualification of the trial judge, has failed to preserve for appellate consideration the claim that his convictions should be reversed on the basis of the trial judge's bias. In any event, a review of the record indicated that the jury was not influenced by any comment or conduct of the trial court, but rather by the overwhelming evidence of Mixon's guilt.

2. Defendant Mixon's claim of prejudice from the trial judge's limitation of cross-examination is without merit. The trial judge properly exercised his discretion and control of the case to restrict cross-examination to relevant matters.

3. Defendant Mixon's one-hundred-year minimum sentence for kidnapping does not shock the conscience of this Court

REFERENCES

Am Jur 2d, Appeal and Error §§ 623, 623.5.

Am Jur 2d, Criminal Law §§ 525 *et seq.,* 984-987.

Am Jur 2d, Judges §§ 166, 202, 203, 222.

Am Jur 2d, Trial §§ 573 *et seq.,* 725, 919-923.

Am Jur 2d, Witnesses §§ 472, 492.

Waiver or loss of right to disqualify judge by participation in proceedings—modern state criminal cases. 27 ALR4th 597.

Adequacy of defense counsel's representation of criminal client regarding right to and incidents of jury trial. 3 ALR4th 601.

when the violent nature of the crime, Mixon's prior conviction record, and the fact that kidnapping is a Proposal B crime are considered.

4. Defendant Mixon was not denied effective assistance of counsel by trial counsel's failure to call certain witnesses in moving to suppress the lineup identification and failure to request CJI 7:7:01 as to identification. The evidence as to Mixon's identification, which included his own confession, was so overwhelming that, even had the trial court suppressed evidence of the lineup, there was adequate identification to convict Mixon. CJI 7:7:01 is only given when there is serious doubt as to identity. Here, there was no such doubt.

5. Defendant Williams was not denied a fair trial when the trial court failed to give the full text of certain standard jury instructions and failed to reiterate the prosecution's burden of proving each element of the crimes beyond a reasonable doubt. The use of standard jury instructions is not mandatory. Here, where no objection was made to the instructions given, reversal is not warranted since the trial court's instructions fairly and adequately protected Williams' rights and they covered the basic and controlling issues.

6. Defendant Williams' claim that the prosecution failed to produce certain res gestae and endorsed witnesses is without merit. The record disclosed that the appearance of these witnesses had been affirmatively waived on the record by the defense.

7. Defendant Williams failed to object to an alleged error in the number of prior convictions reflected in her presentence report, consequently the claim cannot be reviewed on appeal. In any event, the trial court's remarks at sentencing indicated that it considered the number Williams claimed for prior convictions.

8. Defendant Williams' sentence of forty to eighty years for kidnapping is within the range recommended by the sentencing guidelines. The sentence therefore was not an abuse of trial court discretion nor did it shock the conscience of this Court.

Affirmed.

CYNAR, P.J., dissented in part to state that defendant Mixon's minimum sentence of one hundred years for kidnapping was an abuse of sentencing discretion which shocked his conscience. He would vacate Mixon's sentence and remand for a resentencing.

1. CRIMINAL LAW — JUDGES — DISQUALIFICATION OF JUDGES — APPEAL.

A claim of denial of a fair trial on the basis of the trial judge's

bias is not preserved for appeal where no motion for disqualification of the trial judge was made in the trial court.

2. WITNESSES — CROSS-EXAMINATION — APPEAL.

A trial judge has a great deal of discretion in limiting cross-examination and such discretion is not subject to review unless a clear abuse of it is shown (MRE 611).

3. CRIMINAL LAW — ASSISTANCE OF COUNSEL — APPEAL.

The purpose of a trial-court evidentiary hearing ordered by an appellate court when a claim of ineffective assistance of counsel is advanced by a defendant is to allow the appellate court to determine the adequacy of counsel from the facts on the record.

4. CRIMINAL LAW — JURY INSTRUCTIONS — IDENTIFICATION.

The standard jury instruction with regard to identification is to be given only where there is serious doubt as to the perpetrator's identity (CJI 7:7:01).

5. CRIMINAL LAW — STANDARD JURY INSTRUCTIONS.

The use of standard jury instructions in criminal cases is not mandatory; a trial court's instructions must fairly and adequately protect the defendant's rights, cover the basic and controlling issues in the case, and not lead to a miscarriage of justice.

6. CRIMINAL LAW — JURY INSTRUCTIONS — PRESERVING QUESTION.

A verdict will not be set aside on the basis of an alleged error in the jury instructions where no objection was made to the alleged error at trial unless it has resulted in a miscarriage of justice.

7. CRIMINAL LAW — SENTENCING GUIDELINES.

A sentence which results from a proper application of the sentencing guidelines and falls within the range recommended by the guidelines cannot as a matter of law shock the judicial conscience of an appellate court and therefore will not be set aside on appeal.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division Research, Training and Appeals, and *Larry L. Roberts* and *Susan Randolph,* Assistant Prosecuting Attorneys, for the people.

*Ilsa Draznin,* for Carlton Mixon on appeal.

*Ada Snyder Kerwin,* for Annie Lee Williams on appeal.

Before: CYNAR, P.J., and GRIBBS and T. GILLESPIE,* JJ.

T. GILLESPIE, J. Defendant Carlton Mixon appeals as of right his convictions for unarmed robbery, MCL 750.530; MSA 28.798, kidnapping, MCL 750.349; MSA 28.581, and extortion, MCL 750.213; MSA 28.410. Codefendant Annie Lee Williams appeals as of right her convictions for kidnapping, MCL 750.349; MSA 28.581, and extortion, MCL 750.213; MSA 28.410. Defendants were tried by a jury before Detroit Recorder's Court Judge Michael J. Talbot. Defendant Mixon was sentenced to concurrent terms of ten to fifteen years for unarmed robbery, one hundred to two hundred years for kidnapping, and thirteen to twenty years for extortion, and he received credit for 133 days already served. Defendant Williams was sentenced to concurrent terms of forty to eighty years for kidnapping and thirteen to twenty years for extortion, and she received credit for 132 days already served.

Remoyne Thornton, age thirteen, went to a store near his home at 9:00 P.M. on March 14, 1986. It was dark, but Remoyne saw someone he later identified as defendant Mixon standing by a telephone booth approximately fifteen to twenty feet from the store as he went in. He noticed nothing unusual about Mixon's appearance. Remoyne talked with a Mr. Bailey, who was later arrested with defendant, for a few minutes before entering the store and testified that he had the opportunity to observe Mixon during that time.

As Remoyne left the store, someone came up

---

* Circuit judge, sitting on the Court of Appeals by assignment.

from behind him and put his arm around Remoyne's face and eyes. Remoyne was unable to see who did that to him because his eyes were covered, but knew that his assailant was a man wearing white tennis shoes. His eyes were later taped. He identified his assailant as defendant Mixon by his voice.

Mixon then put something to Remoyne's head which Remoyne believed was a gun, and Mixon took a silver and gold chain and a leather jacket from him.

Remoyne's hands were tied and he was led to a car. There was another male in the driver's seat and a woman in the back. Mixon got into the front seat with Remoyne. The car drove off and Mixon asked Remoyne for his phone number, which he provided. Mixon stopped at a telephone booth and shortly returned to the car saying that Remoyne's mother could not get the money for his release immediately.

The woman in the back seat told Remoyne to sit back, and held something to his neck which Remoyne believed to be a knife. The car then made a second stop and Remoyne was led into a house. Remoyne believed this house to be that of the woman in the car because he heard her tell children to go to bed. Remoyne was unable to hear the whole conversation, only hearing, "What is taking y'all so long?"

Remoyne was told to say "Mom" into a telephone, after which a coat was put over his head. Later, he was returned to the car and the same three people took him to another house, his eyes still taped and hands tied. He was led into a room and tied to a bed with a scarf over his head. He was rescued by the police the next morning.

Other evidence linking Mixon to the crime was a ransom box containing money and jewelry,

which was placed in a garbage bag by Mildred Thornton, Remoyne's mother, at the instruction of the police after she finally decided to call them. Mrs. Thornton had been told that her son would be killed if she called the police or failed to comply with the kidnappers' instructions.

The police placed the bag prepared by Mrs. Thornton in a dumpster near a fire station in accordance with the kidnapper's instruction and maintained surveillance. The police saw a man whom they identified as Mixon pick up the bag, and followed him to a nearby house. Upon gaining access to the upstairs flat at this house, they found Bailey, Debra Scott, and defendants Mixon and Williams in the apartment. The police recovered the bag and ransom box. Mrs. Thornton identified the jewelry and two bills, which bore the serial numbers she had recorded, among the ransom objects recovered. The police also found a pair of white tennis shoes in Mixon's room. The next morning Scott led the police to the address where Remoyne was being held.

Derrick Thornton, Remoyne's cousin, went to a telephone booth at Livernois and Fullerton where he heard "something was going to happen." He saw defendant Williams enter the booth. After she left, Derrick retrieved a piece of paper on which was written the Thorntons' telephone number and some directions to relay to the Thorntons.

Mixon and Williams subsequently made handwritten statements to the police admitting having seized Remoyne Thornton and moving him to the places to which he testified. These statements were read at trial.

Defendant Mixon contends that his convictions should be reversed because of bias of the trial judge. Certain portions of the trial record are quoted in his brief to support his claim of bias. We

have reviewed these colloquies, and it is apparent
that the judge dealt sharply with defense attorney's arguments when the defense attorney continued to argue after the judge had ruled. However,
the judge's statements do not reflect a bias against
the defendant, but rather the judge's distaste for
counsel's contentiousness and for the circumstances of the case.

Further, Mixon's claim of bias cannot prevail.
First, because he failed to move for disqualification
of the trial judge pursuant to MCR 2.003(C)(1), the
issue is not preserved for appellate consideration.
*Kroll v Crest Plastics, Inc,* 142 Mich App 284, 291;
369 NW2d 487 (1985), lv den 423 Mich 859 (1985);
*People v Ensign (On Rehearing),* 112 Mich App
286; 315 NW2d 570 (1982). Second, even if the
issue had been preserved, Mixon's principal claim
of bias arises from comments made by the trial
judge during hearings not held in the presence of
the jury. Therefore, the comments could not operate to deny defendant a fair trial. *People v
Pointer,* 133 Mich App 313, 317; 349 NW2d 174
(1984). Third, as stated by Judge BEASLEY in *People v Burgess,* 153 Mich App 715, 719; 396 NW2d
814 (1986):

> The appropriate test to determine whether the
> trial court's comments or conduct pierced the veil
> of judicial impartiality is whether the trial court's
> conduct or comments "were of such a nature as to
> unduly influence the jury and thereby deprive the
> appellant of his right to a fair and impartial trial."

The record in this case discloses that the jury was
not influenced by any comment or conduct of the
trial court, but rather by the overwhelming evidence of Mixon's guilt.

Defendant also claims prejudice in the trial
court's limitation of cross-examination. MRE 611

grants a trial court broad power to control the manner in which a trial is conducted, including the examination of witnesses. As noted by our Supreme Court in *People v Taylor,* 386 Mich 204, 208; 191 NW2d 310 (1971):

> This Court has stated on numerous occasions that a trial judge has a great deal of discretion in limiting cross-examination. Such discretion is not subject to review unless a clear abuse of it is shown.

The record shows that the trial judge properly exercised his discretion and control of the case to restrict cross-examination to relevant matters.

Mixon's second claim is that the trial court abused its discretion in sentencing him to a one-hundred-year minimum term because he will never be eligible for parole, the sentence should shock the conscience under the standard set by *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983), and that the sentence is disproportionate, excessively disparate and nullifies the "lifer law," MCL 791.234(4); MSA 28.2304(4).

This Court's decisions on the subject are split. *People v Cooper,* 168 Mich App 62; 423 NW2d 597 (1988), *People v Harden,* 166 Mich App 106; 420 NW2d 136 (1988), and *People v Crawford,* 144 Mich App 86; 372 NW2d 688 (1985), are some of the later cases upholding such sentences.

In *People v Oscar Moore,* 164 Mich App 378; 417 NW2d 508 (1987), the majority construes a sentence for "life or any term of years" to mean any term of years less than life.

Judge TAHVONEN dissented from the majority in *Oscar Moore* in a scholarly opinion which sets forth the view that the phrase "life or any term of years" is sufficiently clear as to need no construction.

Long indeterminate sentences applied in conjunction with those crimes which are included in Proposal B, MCL 791.233b; MSA 28.2303(3), do tend to abrogate the "lifer law," which allows the parole board to consider parole in ten years on nonmandatory life sentences. *People v Hutchinson,* 155 Mich App 84; 399 NW2d 448 (1986), lv den 428 Mich 866 (1987).

The people of Michigan, when they voted to pass Proposal B in 1978, expressed the public policy of this state that punishment for certain crimes should be certain to the extent of the minimum sentence. Likewise, there are some crimes which are so violent, inhuman and brutal that their perpetrators should not again be given opportunity to prey upon society.

The Supreme Court did not reach the question of long indeterminate sentences in *People v Johnson,* 421 Mich 494; 364 NW2d 654 (1984), but did decide that "life" and "any term of years" are mutually exclusive concepts and that Proposal B applies only to indeterminate sentences of "any term of years."

This construction of Proposal B has caused a proliferation of long indeterminate sentences in violent cases or in cases where the defendant has displayed no likelihood of reform and the judge has an option between a life sentence and a "term of years."

The panel in *People v Hurst,* 155 Mich App 573; 400 NW2d 685 (1986), considered the question and did not take a position but sought review as to the actual results of the lifer law on nonmandatory life sentences.

It is the opinion of this panel that kidnapping, which is a Proposal B crime, MCL 791.233b(q); MSA 28.2303(3)(q), is sufficiently violent that, when combined with Mixon's prior record, a long

indeterminate sentence does not shock our conscience.

Mixon also complains that the *Ginther* hearing held pursuant to this Court's order of remand regarding the alleged failure of defense counsel to call certain witnesses in moving to suppress the lineup identification did not meet the requirements of this Court's order. The purpose of a hearing based on *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), is to allow the appellate court to determine the adequacy of trial counsel from the facts on the record. The evidence, including the confession, as to identification of Mixon was so overwhelming that, even had the trial court suppressed the lineup identification, there was adequate identification to convict.

Mixon's last claim is that he was denied effective assistance of counsel in that counsel failed to request CJI 7:7:01 as to identification. This instruction is only given when there is serious doubt of identity. There was no real doubt in this case. Further, this claim should have been raised in a motion for new trial or evidentiary hearing before appeal, which was not done. *People v Lawson,* 124 Mich App 371; 335 NW2d 43 (1983); *People v Kenneth Johnson,* 144 Mich App 125; 373 NW2d 263 (1985), lv den 424 Mich 854 (1985).

Defendant Williams' first claim of error is that she was denied a fair trial because the trial court failed to give the full text of certain CJI instructions, namely, paragraph 7 of 4:2:02, paragraph 4 of 19:1:01 and the last sentence of 5:2:13, and that the court erred in failing to reiterate the "reasonable doubt" burden of proof in connection with each element of a crime.

It should be noted that the use of Standard Criminal Jury Instructions is not mandated. The court's instructions should fairly and adequately

protect the defendant's rights, cover the basic and controlling issues in the case, and not lead to a miscarriage of justice. *People v Stinnett,* 163 Mich App 213; 413 NW2d 711 (1987). It is our conclusion that the court's instructions fulfilled that purpose.

Further, no objections were made to the instructions as given and, in the absence of an objection, alleged error will not be grounds for reversal unless a miscarriage of justice resulted therefrom. *Burgess, supra,* p 726; *People v Seabrooks,* 135 Mich App 442; 354 NW2d 374 (1984).

In addition to the general reasons just stated, there are particular reasons why Williams' claims of inadequate instructions cannot be considered as grounds for reversal. Paragraph 7 of CJI 4:2:02 reads as follows:

> If the direct and circumstantial evidence, taken together, is open to two reasonable constructions, one indicating guilt and the other innocence, it is your duty to accept the construction indicating innocence.

This statement is not supported by case law. *People v Corbett,* 97 Mich App 438; 296 NW2d 64 (1980), lv den 411 Mich 856 (1981); *People v Freeland,* 101 Mich App 501, 504-505; 300 NW2d 616 (1980) (discussing identical language in CJI 3:1:10[7] which was superseded by CJI 4:2:02); *People v Mahaday,* 108 Mich App 591; 310 NW2d 805 (1981), lv den 411 Mich 1079 (1981); *People v Peete,* 113 Mich 510, 515; 317 NW2d 666 (1982) (also discussing CJI 3:1:10[7], superseded by CJI 4:2:02); *People v Hayden,* 132 Mich App 273, 288-289; 348 NW2d 672 (1984); *People v Seabrooks, supra,* pp 453-456.

The second objection was that the court did not preface each element with the words that indi-

cated the element must be proven beyond a reasonable doubt as suggested by the Standard Criminal Jury Instructions. It is elementary that each element of a crime must be proven beyond a reasonable doubt and the jury should be so instructed. In this case the court instructed the jury that "if after considering all the evidence you are not satisfied that every element of the offense charged has been proved beyond a reasonable doubt, you have a responsibility to return a verdict of not guilty." It is not error if in instructing on the elements of a crime the suggested prelude does not preface each element.

The third objection raised was that the court failed to give paragraph 4 of CJI 19:1:01, which is one of the kidnapping instructions. Instead, the trial court gave CJI 19:1:03 in toto. CJI 19:1:03 is the appropriate instruction to give when, as here, the kidnapping is for the purpose of extortion. It was entirely proper not to use CJI 19:1:01. *People v Robbins,* 131 Mich App 429, 433; 346 NW2d 333 (1984). The Use Notes supplemental to 19:1:01 specifically state that such kidnapping instruction is not to be used in cases where extortion is the underlying crime. Trial counsel was informed of the court's intent to instruct using 19:1:03, and he did not object.

Defendant Williams' last objection to the instructions is that the trial court did not instruct in accordance with CJI 5:2:13, to the effect that police testimony is judged by the same standards as any other testimony. This instruction was always viewed by the Criminal Jury Instructions Committee as discretionary, and was fully covered by the trial judge in the following language:

The fact that a witness is a police officer, of course, doesn't give his testimony any greater or

lesser weight than the testimony of any other witness. Obviously you have the duty of weighing the believability of all the witnesses and giving a witness's testimony such weight as you believe it deserves under the circumstances you have observed, and of course that also includes police witnesses.

The defendant's next allegation of error is that the prosecutor failed to produce certain res gestae and endorsed witnesses despite the fact that no waiver of their appearance was made, and that defendant should be granted a hearing to determine if she was prejudiced by this failure.

Contrary to defendant's assertion, the transcript discloses that the appearance of all witnesses claimed to have been listed but not produced was affirmatively waived on the record by the defense.

Defendant also argues that the presentence investigation report incorrectly shows that Williams had two prior armed robbery convictions, whereas she had actually been previously convicted of only one armed robbery. Defendant made no objection to the error at the time of sentencing. Further, the judge's comments at sentencing show that he considered only one prior armed robbery conviction in imposing sentence. For these reasons we will not review this alleged error. *People v Wiggins,* 151 Mich App 622, 625-626; 390 NW2d 740 (1986).

Finally, defendant Williams claims that the trial court abused its discretion in sentencing her to forty to eighty years for the kidnapping. The sentence was within the sentencing guidelines minimum sentence range, which was computed to be 180 months (fifteen years) to life.

In *People v Powers,* 155 Mich App 122, 123; 399 NW2d 465 (1986), this Court held that a trial court which follows the guidelines laid down by our

Supreme Court cannot be said to have abused its discretion to the extent that it shocks the conscience. Furthermore, in *People v Shanes,* 155 Mich App 423, 426; 399 NW2d 73 (1986), we held as a matter of law that a sentence which falls within the range recommended in the guidelines may not be set aside on appeal.

Affirmed.

CYNAR, P.J. *(concurring in part; dissenting in part).* I concur with the majority opinion except I dissent as to the sentence imposed on defendant Carlton Mixon. In *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), the Supreme Court held that upon proper request, the appellate court shall review a trial court's exercise of discretion in sentencing, but may grant relief only upon finding that the trial court abused its discretion to the extent the sentence shocks the conscience of the appellate court. The Court also noted the proper criteria for determination of an appropriate sentence. *Coles, supra.*

While I agree with the majority in accepting Judge TAHVONEN's dissent that the phrase "life or any term of years" is sufficiently clear as to need no construction, I do so with some reservation. In my opinion, imposition of a lengthy minimum sentence is not in itself determinative that the sentence is invalid. For instance, the trial court did not abuse its discretion in sentencing defendant Annie Lee Williams to forty to eighty years for kidnapping. Nor was there an abuse of discretion in *People v Cooper,* 168 Mich App 62; 423 NW2d 597 (1988), where a sentence of one hundred to two hundred years was imposed, or in *People v Harden,* 166 Mich App 106; 420 NW2d 136 (1988), where a sentence of 90 to 150 years was imposed, or in *People v Crawford,* 144 Mich

App 86; 372 NW2d 688 (1985), where a sentence of
80 to 120 years was imposed. Considering the
brutal nature of the crimes involved, the sentences
imposed were within the discretion of the sentenc-
ing judge.

In this case, a lengthy minimum sentence might
have been appropriate. However, to categorically
impose a minimum sentence of one hundred to two
hundred years, based on the record in this case, in
my opinion, was an abuse of discretion which
should shock the conscience of this Court. I would
vacate the sentence for defendant Carlton Mixon
and remand for resentencing.