## *In re* MANACA.

146    697
f147  ²131
Continued

1. HABEAS CORPUS—NATURE OF REMEDY—QUESTIONS CONSIDERED —RECORD.

This court will not inquire on habeas corpus whether or not the court, after receiving a plea of guilty, made the investigation required by law before sentencing petitioner, where the record of conviction does not affirmatively show that he did not.

2. CRIMINAL LAW—MAXIMUM SENTENCE—STATUTE—CONSTRUCTION.

A sentence of 15 years for rape, the punishment for which is life or any number of years (section 11489, 3 Comp. Laws), is a sentence for the maximum term of 15 years, and as such sufficiently complies with section 1, Act No. 136, Pub. Acts 1903, requiring a maximum sentence in such cases.

3. CONSTITUTIONAL LAW—AMENDMENT OF CONSTITUTION—POWER OF PEOPLE.

The people of Michigan had a right to pass the amendment to the Constitution (art. 4, § 47) providing for indeterminate sentences, such provision not being within any of the prohibitions of the Constitution of the United States.

4. SAME—CRIMINAL LAW—INDETERMINATE SENTENCES.

Article 4, § 47, of the Constitution, expressly authorizes an

indeterminate sentence law such as Act No. 136, Pub. Acts.
1903.

5. STATUTES—REPEAL — EFFECT ON JUDGMENTS — INDETERMINATE.
SENTENCES.

Act No. 184, Pub. Acts 1905, repealing in express terms Act No.
136, Pub. Acts 1903, does not affect sentences already
pronounced under the latter act and in process of execution.

Certiorari to Ionia; Davis, J.   Submitted October 16,
1906.   (Calendar No. 21,924.)   Decided December 21,.
1906.

Habeas corpus proceedings by Abraham Manaca to ob-
tain his release from the Michigan reformatory at Ionia.
There was an order denying the petition, and petitioner
brings certiorari.   Affirmed.

*A. A. Ellis* and *Nichols & Sheldon*, for petitioner.

*John E. Bird*, Attorney General (*George S. Law*, of
counsel), for respondent.

MOORE, J.   On January 2, 1904, the petitioner was.
convicted of the crime of rape, and sentenced to the Mich-
igan reformatory at Ionia for the period of 15 years.
He applied to the respondent for a writ of habeas corpus,
claiming his sentence was illegal, and that he should be.
set at liberty.   After a full hearing the circuit judge de-
cided that he was legally imprisoned.   He seeks to review
that decision by the writ of certiorari.

The claim of counsel is that petitioner is illegally re-
strained of his liberty:

(1) Because the record failed to show that the circuit
judge after receiving the plea of guilty, and before pro-
nouncing sentence, made the investigation required by
law.

(2) Because the court in passing sentence failed to fix
any minimum or maximum as required by law.

(3) Because the title of the act under which he was sen-
tenced, as well as the act under which he was detained,
do not give any intimation that any person is to be sen-

tenced or detained for a definite period as provided in the body of the act.

(4) Because the act is unconstitutional.

We quote from the brief of counsel:

"We claim that the laws of 1903 and 1905 are in direct violation of the Constitution of this State in the following particulars:

"(*a*) That they violate the provisions of article 3, § 1, in this: That they attempt to divest the judicial department of the government of its rights and duties and place the same with the executive and his appointees.

"(*b*) That they violate the provisions of article 4, § 20, in this: That the power given by the amendment to the Constitution (see article 4, § 47 [ratified in November, 1902]) only relates to the 'punishment * * * detention and release of persons imprisoned or detained on such sentences,' and the titles to said acts read:

"'An act to provide for the indeterminate sentence and for the disposition, management and release of criminals under sentence, and for the expense attending the same.' Title of Act No. 136, Pub. Acts 1903.

"'An act to provide for the indeterminate sentence as a punishment for crime, upon the conviction thereof, and for the detention and release of persons imprisoned or detained on such sentence, and for the expense attending the same.' Title of Act No. 184, Pub. Acts 1905.

"Section 4 of Act No. 136 provides:

"'No prisoner who has been twice previously convicted of a felony shall be eligible to parole under the provisions of this act.'

"Section 5 of Act No. 184 provides:

"'And prisoners who have been twice convicted of a felony shall not be eligible to parole.'

"These provisions are certainly in violation of article 4, § 20, providing: 'No law shall embrace more than one object, which shall be expressed in its title' and they also violate section 47 of the same article conferring power only upon the legislature to provide for the indeterminate sentences, as a punishment for crime on conviction thereof, and for the detention and release of persons imprisoned or detained on such sentences.

"(*c*) That they violate the provisions of article 5, § 11, in

this: That they place in other hands aside from the executive the right to grant reprieves, pardons, commutations and absolute discharges as to certain defined offenses.

"(d) That it violates the provisions of article 6, §§ 1, 27, 28, 31 and 32 of said article in this: That it not only deprives the court of the right of inflicting punishment for crime, but it deprives the accused of all right of a trial by a jury; and also deprives him of his liberty without due process of law.

"(e) That by the provisions of this act, it makes it possible to detain a man in prison for life for the statute provides that where a prisoner has been twice before convicted he shall not be subject to parole, and that means in a certain class of cases life imprisonment; and in other cases, the maximum term running from 5 to 30 years without making provision for any hearing upon the question, and violates the provisions of the Constitution relating to cruel and unusual punishments."

We will consider these claims of counsel in the order in which they are presented.

1. The writ of habeas corpus is not adapted to review the proceedings of a trial court where jurisdiction is shown. As it does not appear affirmatively that after respondent pleaded guilty, and before pronouncing sentence, the trial judge did not make the investigation required by law, we will not inquire into that question in this proceeding. *In re Lewis*, 124 Mich. 199.

2. Section 1, Act No. 136, Pub. Acts 1903, provides:

"In all cases where the maximum sentence, in the discretion of the court, may be for life or any number of years, the court imposing sentence shall fix the maximum sentence."

The penalty provided for the offense of the petitioner is imprisonment for life or any number of years, in the discretion of the judge (section 11489, 3 Comp. Laws), and it was the duty of the trial judge in sentencing the petitioner to fix the maximum sentence. Was the sentence imposed by him such a failure to comply with the provisions of the statute as to entitle the prisoner to his discharge? We think the provisions of the second section

of the act would prevent such a construction. Is not what was done by the judge equivalent to fixing a maximum sentence? The word maximum is defined as meaning the greatest, superlative of great. "The greatest quantity or value attainable in a given case." Webster.

The trial court was authorized to sentence the petitioner for life. Instead of pronouncing such a sentence he sentenced him for 15 years, thereby fixing a maximum sentence, beyond which the petitioner could not be lawfully detained in prison. We think this was the effect of the sentence, and it should be held to be a substantial compliance with the provisions of the statute.

Counsel say, even if the original sentence is valid under the act of 1903, that as petitioner has served the minimum sentence prescribed therein, and as said act is repealed, and as the act of 1905 is void as to him because ex post facto, that petitioner is entitled to his discharge. As we have reached the conclusion that the sentence imposed must be treated as a maximum sentence, it is not necessary to discuss this contention.

3. It is claimed the title is not broad enough to allow the provision in the body of the act for the detention of a prisoner for a definite period of time. This contention is based upon the provision in the act:

"That no person who has been twice convicted of a felony shall be eligible to parole under the provisions of this act."

This contention of counsel can very well be discussed with paragraph four.

4. Is the law unconstitutional for any of the reasons stated under this head? An indeterminate sentence law is not a new thing; men and women interested in sociology have for a long time endeavored to enact into law provisions that should be an incentive to law breakers, who have been convicted of crime, to reform and become good citizens. Provisions which it was hoped might have this result were enacted by our legislature in the law which was before the court in *People* v. *Moore*, 62 Mich. 496.

A statute having the same general purpose in view relating to discipline in the State prison at Jackson was before the court in *Re Walsh*, 87 Mich. 466. In 1889 an indeterminate sentence law (Act No. 228, Pub. Acts 1889) was passed. This act came before the court in *People* v. *Cummings*, 88 Mich. 249 (14 L. R. A. 285). The provisions of the act were discussed at great length by Justice MORSE, who wrote the majority opinion, holding the law to be unconstitutional, and at lesser length by Justice GRANT, who was of the opinion the law did not violate any constitutional principle. Not only were the members of this court disagreed, but there was a very considerable conflict in the conclusions reached by other courts. Those of Ohio, Kansas, Massachusetts, and perhaps other States, had sustained similar legislation. A reading of the opinions in the three Michigan cases cited will show that nearly every question assailing the validity of the present indeterminate sentence law was presented in one form or another in those cases, and was discussed and passed upon by the court; the conclusion of the majority of the judges being that the Constitution, as it then existed, made the legislation invalid.

With these decisions, in relation to the parole of convicted persons and construing indeterminate sentence laws, in mind, the legislature submitted the question to the people as to whether they desired to amend their fundamental law. An affirmative answer was given by adopting article 4, § 47, reading as follows:

" The legislature may, by law, provide for the indeterminate sentences, so-called, as a punishment for crime, on conviction thereof, and for the detention and release of persons imprisoned or detained on such sentences."

The people had the right to pass such an amendment. Mr. Justice COOLEY, in his work on Constitutional Limitations (7th Ed.), p. 62, says that the power of the people to amend or revise their Constitutions is limited by the Constitution of the United States in the following particulars:

" 1. It must not abolish the republican form of government, since such act would be revolutionary in its character, and would call for and demand direct intervention on the part of the government of the United States.

" 2. It must not provide for titles of nobility, or assume to violate the obligation of any contract, or attaint persons of crime, or provide ex post facto for the punishment of acts by the courts which are innocent when committed, or contain any other provision which would, in effect, amount to the exercise of any power expressly or impliedly prohibited to the States by the Constitution of the Union. * * *

" 6. Subject to the foregoing principles and limitations, each State must judge for itself what provisions shall be inserted in its Constitution; how the powers of government shall be apportioned in order to their proper exercise; what protection shall be thrown around the person or property of the citizen; and to what extent private rights shall be required to yield to the general good.   And the courts of the State, still more the courts of the Union, would be precluded from inquiring into the justice of their action, or questioning its validity, because of any supposed conflict with fundamental rules of right or of government, unless they should be able to show collision at some point between the instrument thus formed and that paramount law which constitutes, in regard to the subjects it covers, the fundamental rule of action throughout the whole United States."

In the case of *Dreyer* v. *Illinois*, 187 U. S. 71, it is said:

"Whether the legislative, executive and judicial powers of a State shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the State.   And its determination one way or the other cannot be an element in the inquiry whether the due process of law prescribed by the Fourteenth Amendment has been respected by the State or its representatives when dealing with matters involving life or liberty.   'When we speak,' said Story, ' of a separation of the three great departments of government, and maintain that that separation is indispensable to public liberty, we are to understand this maxim in a limited sense.   It is not meant to

affirm that they must be kept wholly and entirely separate and distinct, and have no common link of connection or dependence, the one upon the other, in the slightest degree. The true meaning is, that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free constitution.' 1 Story on the Constitution (5th Ed.), p. 393. Again: ' Indeed, there is not a single constitution of any State in the Union which does not practically embrace some acknowledgment of the maxim, and at the same time some admixture of powers constituting an exception to it.' 1 Story on the Constitution (5th Ed.), p. 395."

By the adoption of this amendment the people of the State so changed their fundamental law as to do away with the constitutional objections which had been presented to, and found insurmountable by, this court. We quote from the opinion of Justice CARPENTER in *Re Campbell*, 138 Mich. 597 :

" Petitioner also urges that, as thus construed, the indeterminate sentence law is unconstitutional, because the 'imposition of a sentence is a judicial act, and the exercise of discretion relative to the term of imprisonment is a judicial function,' which, under our Constitution, can be exercised only by certain specified courts. This argument assails the constitutionality of characteristic and essential features of the indeterminate sentence law. We must hold that the constitutional amendment (see Pub. Acts 1903, p. 452) which gave the legislature express authority to enact such a law, gave it authority to enact a law containing these features."

We do not deem it necessary to discuss the case more in detail.

The writ is dismissed, and the petitioner remanded.

GRANT, J., concurred with MOORE, J.

BLAIR, J. I concur in the result. I do not wish to be understood, however, as expressing any opinion as to the constitutionality of Act No. 184 of the Public Acts of 1905. In my opinion, the constitutionality of that act is

not involved in this proceeding. The petitioner committed his offense, was tried, convicted and sentenced while Act No. 136 of the Public Acts of 1903 was in force. He had no appeal pending when Act No. 184, Pub. Acts 1905, took effect, and his rights and obligations must be determined throughout the term of his sentence by the provisions of said Act No. 136.

The repeal of Act No. 136 by Act No. 184 did not, in my judgment, affect sentences already pronounced and in process of execution. *In re Lambrecht*, 137 Mich. 450. Under that decision the law of 1905 must be given a prospective application and relate only to such convictions as were had after it took effect. While Act No. 184, Pub. Acts 1905, expressly repeals Act No. 136, Pub. Acts 1903, such repeal should not, in my opinion, be held to extend to cases like the present, where sentence had been regularly pronounced and was in due course of execution. 26 Am. & Eng. Enc. Law (2d Ed.), pp. 755, 756; *State* v. *Addington*, 2 Bailey (S. C.), 516; *Arron* v. *State*, 40 Ala. 307.

CARPENTER, C. J., and McALVAY, J., concurred with BLAIR, J.