## PEOPLE v LEGREE

Docket No. 105253. Submitted September 13, 1988, at Lansing. Decided May 15, 1989.

Roy Allen Legree pled guilty in Bay Circuit Court to charges of second-degree murder and first-degree criminal sexual conduct and was sentenced to concurrent terms of 150 to 500 years in prison, Eugene C. Penzien, J. Defendant appealed, contending that the sentences imposed are invalid.

The Court of Appeals *held:*

A defendant convicted of second-degree murder or first-degree criminal sexual conduct may be sentenced to either life in prison or any term of years. If sentenced to life in prison, the defendant is eligible for parole consideration after serving ten years, but if sentenced to an indeterminate term of years, the defendant must serve the minimum sentence before being eligible for parole consideration. Therefore, a sentence which has as its minimum a term which cannot possibly be served during the lifetime of the defendant becomes a determinate sentence, i.e., life in prison without possibility of parole, a sentence harsher than the life sentence authorized by law. The imposition of such a sentence violates the indeterminate sentencing act and is invalid.

Reversed and remanded for resentencing.

Sawyer, J., dissented. He would hold that the indeterminate sentencing act grants a trial court the discretion to impose a sentence of any term of years and that a sentence need not be tailored so that the defendant can serve the minimum term during his expected lifetime so that he can be eligible for parole consideration. He would hold that defendant's sentences are lawful and would affirm.

Criminal Law — Sentencing — Second-Degree Murder — First-Degree Criminal Sexual Conduct — Indeterminate Sentencing Act.

A defendant convicted of second-degree murder or first-degree

References
Am Jur 2d, Criminal Law §§ 525 *et seq.*, 542.
See the Index to Annotations under Indeterminate Sentence.

criminal sexual conduct may be sentenced to either life in prison or any term of years; if sentenced to life in prison, the defendant is eligible for parole consideration after serving ten years, but if sentenced to an indeterminate term of years, the defendant must serve the minimum sentence before being eligible for parole consideration; therefore a sentence which has as its minimum a term which cannot possibly be served during the lifetime of the defendant becomes a determinate sentence, i.e., life in prison without possibility of parole, a sentence harsher than the life sentence authorized by law; the imposition of such a sentence violates the indeterminate sentencing act and is invalid (MCL 769.9[2]; MSA 28.1081[2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people.

*Allsopp, Fitzgerald & Kolka, P.C.* (by *Arthur M. Fitzgerald*), for defendant on appeal.

Before: HOLBROOK, JR., P.J., and SAWYER and MURPHY, JJ.

MURPHY, J. Defendant appeals as of right following his plea-based convictions for second-degree murder, MCL 750.317; MSA 28.549, and first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2). Defendant was sentenced to concurrent terms of 150 to 500 years in prison. We vacate defendant's sentences and remand for resentencing.

The facts giving rise to defendant's convictions almost defy description. The crimes of the nineteen-year-old defendant, which resulted in the murder of a defenseless elderly woman in her home, were violent, brutal, and senseless.

The record reveals that on the afternoon of March 4, 1987, defendant had been drinking at his brother's house in Bay County. After consuming a considerable amount of alcohol, defendant bor-

rowed a shotgun from his brother and went outside to shoot at pigeons. While walking in the neighborhood, defendant came upon the victim's house. He observed a car in the garage and decided to enter the house to secure the keys so he could drive to Detroit to visit his wife, from whom he was separated. After breaking into the house, defendant encountered an eighty-year-old woman sitting on her couch. Defendant threatened her with the shotgun and forced her to an upstairs bedroom where he proceeded to rape her. Then defendant shot her in the head, killing her instantly. Defendant then took some money from the victim's purse and drove her car to Detroit. When defendant returned the next day, he was arrested. The prosecution, after issuing a four-count information which included a first-degree murder count, allowed defendant to plead guilty to second-degree murder and first-degree criminal sexual conduct.

The presentence investigation report revealed that defendant's only previous contact with the law was for a few minor traffic violations. The sentencing guidelines recommended a sentence of ten years to life. At sentencing, the court first ruled out any possibility that defendant could be rehabilitated. In addition, the court stated that there was nothing it could do at sentencing which would deter anyone from committing a crime like the one committed by defendant. Instead, the sentencing judge imposed the 150- to 500-year sentence solely to protect society. The court stated:

> Society absolutely cries out in anguish for protection from Mr. Legree and some people, I'm sure, who would in other times and in other settings say capital punishment is not for me; I don't want anything to do with it, would say in—in a case like this, if they were personally exposed to it, I will

opt for that degree of protection so profound is the
need to feel safe.

It is also clear that the court wanted to ensure
that defendant would never have the opportunity
to be paroled under Michigan's "lifer law," MCL
791.234(4); MSA 28.2304(4). To that end, the court
imposed a sentence which, even assuming that
defendant was a model prisoner, would mean that
defendant would be approximately 140 years old
before he would be eligible for parole.[1] There is no
question that this sentence, in effect, is one for life
in prison, without the possibility of parole.

Defendant now appeals claiming that he should
be resentenced because the 150- to 500-year sen-
tences imposed by the trial court are invalid. We
agree.

Initially, we note that the resolution of the
sentencing issues raised in this case confronts us
with a most difficult task. Various panels of this
Court have grappled with similar long-term inde-
terminate sentences in an attempt to determine
the bounds of a circuit court's power to sentence a
defendant to "any term of years."[2] What remains

[1] Testimony from the chairman of the Michigan Parole Board in
*People v Hurst (After Remand),* 169 Mich App 160, 166; 425 NW2d
752 (1988), revealed that an indeterminate sentence of 150 to 300
years for a Proposal B crime would equate to a "best minimum out"
of 120 years.

[2] Although employing a different analysis than set forth in this
opinion, we note that there is a conflict in this Court regarding
whether a "term of years" sentence is valid if it exceeds defendant's
life expectancy. See *People v Oscar Moore,* 164 Mich App 378; 417
NW2d 508 (1987), but see *People v Harden,* 166 Mich App 106; 420
NW2d 136 (1988); *People v Cooper,* 168 Mich App 62; 423 NW2d 597
(1988); *People v Jefferson,* 172 Mich App 492; 432 NW2d 351 (1988);
*People v Martinez,* 147 Mich App 94; 382 NW2d 741 (1985); *People v
Crawford,* 144 Mich App 86; 372 NW2d 688 (1985). See also *People v
Murray,* 72 Mich 10, 17; 40 NW 29 (1888); *People v Robinson,* 172
Mich App 650; 432 NW2d 390 (1988). We also note that a similar
sentencing scenario is currently before our Supreme Court in *People
v Timothy Moore,* unpublished opinion per curiam of the Court of

clear, however, is that there is no consensus, and until either our Supreme Court or the Legislature readdresses these sentencing issues, this Court and the circuit courts of this state will continue to disagree on what constitutes an appropriate indeterminate sentence.

There is no question that the crimes committed by defendant in this case defy reason and defendant's brutal and senseless acts require that defendant be punished severely. Moreover, we have thoroughly reviewed the lower court record, paying particular attention to the sentencing record and transcript, and we are fully aware of the far-reaching impact and devastating effects this brutal murder has had not only upon the victim's family, but the community at large. Nonetheless, we are constrained by the facts of this case to the review of defendant's 1½- to 5-century sentences for committing two life-sentence crimes, first-degree criminal sexual conduct and second-degree murder.[3]

The sentencing scheme established by the Legislature in this state provides for individualized sentencing. In explaining the policy for individualized sentencing, our Supreme Court has stated:

> The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential. While the resources allocated for rehabilitation may be inadequate and some persons question whether rehabilitation can be achieved in the prison setting, this view of sentencing is the

Appeals, decided February 19, 1987 (Docket No. 89319), lv gtd 429 Mich 858; 412 NW2d 924 (1987).

[3] It is not for this Court to review the wisdom of the prosecutor's decision in this case to permit a plea to second-degree murder and forego prosecution for first-degree murder, where conviction would have mandated life imprisonment without parole for defendant.

present policy of the state. A judge needs complete information to set a proper individualized sentence. [*People v McFarlin,* 389 Mich 557, 574; 208 NW2d 504 (1973).]

Moreover, appropriate basic considerations used in determining an appropriate sentence include: (a) the reformation of the offender; (b) the protection of society; (c) the disciplining of the wrongdoer; and (d) the deterrence of others from committing like offenses. See *People v Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972); *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983); *People v Broden,* 428 Mich 343, 350; 408 NW2d 789 (1987).

The Legislature has the power, with certain recognized exceptions, to establish appropriate penalties for criminal violations to be enforced by the courts. Since the 1902 amendment of the 1850 Michigan Constitution, the people of this state have provided the Legislature with the power to establish indeterminate sentences, and the constitutionality of indeterminate sentencing legislation has been upheld by our courts. See *In re Manaca,* 146 Mich 697; 110 NW 75 (1906); *People v Tanner,* 387 Mich 683, 686-687; 199 NW2d 202 (1972). With the exception of first-degree murder and certain major drug offenses, where life imprisonment without parole is required, the Legislature has authorized and approved a sentencing scheme of indeterminate sentences.

The Legislature in addressing indeterminate sentencing in MCL 769.8; MSA 28.1080 has provided in pertinent part the following:

When a person is convicted for the first time for the commission of a felony, and the punishment prescribed by law for that offense may be imprisonment in a state prison, *the court imposing sentence shall not fix a definite term of imprisonment,*

but shall fix a minimum term, except as otherwise provided in this chapter. The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence. [Emphasis added.]

In addition, MCL 769.9(2); MSA 28.1081(2) provides:

In all cases where the maximum sentence in the discretion of the court may be imprisonment for life or any number or term of years, the court may impose a sentence for life or may impose a sentence for any term of years. If the sentence imposed by the court is for any term of years, the court shall fix both the minimum and the maximum of that sentence in terms of years or fraction thereof, and sentences so imposed shall be considered indeterminate sentences. The court shall not impose a sentence in which the maximum penalty is life imprisonment with a minimum for a term of years included in the same sentence.

The crimes for which defendant now stands convicted are "punishable by imprisonment in the state prison for life or any term of years." See MCL 750.317; MSA 28.549 (second-degree murder) and MCL 750.520b; MSA 28.788(2) (criminal sexual conduct in the first degree). As stated by our Supreme Court in *People v Johnson,* 421 Mich 494, 497-498; 364 NW2d 654 (1984):

Accordingly, when a statute authorizes the imposition of a sentence of "life or any term of years" *it allows the imposition of a fixed sentence —life—or an indeterminate sentence—any number of years.* We observed in *People v Blythe,* 417 Mich 430, 434-435; 339 NW2d 399 (1983), that the Legislature viewed the phrase "life or any term of years" as descriptive of the maximum sentence

only. The sentence concepts "life" and "any term of years" are mutually exclusive and a sentencing *judge may (in the appropriate case) opt for either but not both.* [Emphasis added.]

The sentencing judge in this case had the authority to impose a sentence of life imprisonment or a term of years; that is, the *indeterminate* sentence contemplated by the Legislature in its sentencing scheme. If life imprisonment had been imposed, under Michigan's "lifer law" defendant would have been subject to the jurisdiction of the parole board and eligible for review for parole in ten years. MCL 791.234(4); MSA 28.2304(4). In fact, due to the many conditions imposed before a defendant is released on parole,[4] a life sentence rarely results in a defendant's being paroled after ten years. Rather, it simply means a defendant will be eligible for review by the parole board at that time.

However, since the crimes for which defendant now stands convicted are Proposal B crimes, and indeterminate sentences were imposed, as opposed to life sentences, defendant must serve his minimum terms of imprisonment before he is eligible for parole.[5] Strangely, the impact of Proposal B along with the competing statutory provisions which address the convoluted sentencing scheme in Michigan result in it often being the case that a sentence of life imprisonment does not mean being in prison for life. Rather, under a life sentence, a defendant is eligible for parole well before a defendant who has been sentenced to a long-term inde-

---

[4] See MCL 791.235; MSA 28.2305.

[5] See *People v Johnson, supra,* p 498. Also, as previously noted, defendant must serve, at a minimum, approximately 120 of his 150-year minimum terms. Since defendant was nineteen years old at sentencing, he will be eligible for parole when he is 139 years old in the year 2107.

terminate term of years. See *People v Hurst (After Remand)*, 169 Mich App 160; 425 NW2d 752 (1988).

As a result, some trial judges, as evidenced by this case, avoid imposing a life sentence which has the potential of parole after ten years in an effort to impose an even greater sentence. It is difficult to imagine that this development was intended or contemplated by the Legislature when it set the penalty for certain criminal offenses as being "punishable by imprisonment in the state prison for life or any term of years."

Had the Legislature chosen to make the possible penalty for second-degree murder or first-degree criminal sexual conduct life without the possibility of parole, we would defer to this judgment and affirm defendant's sentences. However, since the Legislature has not chosen to impose such a harsh penalty for these crimes, we are constrained to review defendant's indeterminate sentences in light of the legislative pronouncements relative to such sentences. Although defendant now challenges his sentences on several grounds,[6] in our view, the dispositive question is this: Is a sentence of 150 to 500 years imprisonment, which unquestionably is far in excess of the normal human life span, a sentence which undermines the indeterminate sentencing statutes and overall statutory sentencing scheme in Michigan? We believe that it is.[7]

[6] Defendant raises four issues on appeal: (1) the sentences imposed are an abuse of discretion and should shock the conscience of this Court; (2) the sentence is so disparate that it amounts to cruel and unusual punishment; (3) the sentence violates the spirit and intent of the indeterminate sentencing statute; and (4) because the sentence far exceeds defendant's life expectancy and precludes the executive branch from granting parole, the sentence violates the separation of powers doctrine of the Michigan Constitution.

[7] The dissent suggests that our decision leaves many issues unresolved. Perhaps it does. However, we see no reason to address hypothetical issues in this appeal. Our holding is limited to this case under the dispositive issues presented.

Our Supreme Court in *People v Tanner, supra,* affirmed the validity of indeterminate sentencing in this state. The Court held that any sentence with too short an interval between the minimum and maximum sentence is not an indeterminate one and that any sentence which provides for a minimum exceeding two-thirds of the maximum sentence is improper because it fails to comply with the indeterminate sentencing act. The Court in *Tanner* quoted with approval *In re Campbell,* 138 Mich 597, 599; 101 NW 826 (1904), which stated:

> [T]he trial judge, by prescribing a very low maximum, *may totally deprive the governor, pardon board, and board of control of the opportunity to exercise the discretion which the statute intended to give them.* If it does, then the trial judge, in cases where he can fix the minimum—as in larceny—*may, by increasing the minimum and [or] reducing the maximum, make a determinate sentence, and thus frustrate the legislative purpose in enacting the indeterminate sentence law.* [Emphasis in original.]

A sentence of 150 to 500 years unquestionably exceeds defendant's life expectancy and thus precludes any likelihood that the Governor, acting through the parole board, will be given the opportunity to exercise discretion which the Legislature intended to provide by enacting the indeterminate sentencing statutes. A 150- to 500-year sentence cannot be said to be an *indeterminate* sentence; rather it is clearly nothing more than a *determinate* sentence.[8] We see no reason to exalt form over substance. In form this is an indeterminate

---

[8] The *Tanner* Court stated:

Convinced as we are, that a sentence with too short an interval between minimum and maximum is *not indeterminate,* we hold that any sentence which provides for a minimum

sentence; in substance it is just as determinate as a life sentence without the possibility of parole. We believe that these sentences (1) undermine the indeterminate sentencing scheme, (2) violate the intent of the Legislature, and (3) are inconsistent with the reasoning behind our Supreme Court's pronouncement in *Tanner, supra.* Therefore, we conclude defendant's sentences are invalid.

Based on the foregoing analysis, we reverse defendant's 150- to 500-year sentences and remand to the trial court for resentencing.

Finally, we invite both our Supreme Court and the Legislature to promptly revisit the validity of these extremely long-term indeterminate sentences so that the circuit courts have the appropriate guidance in imposing a life or any term of years sentence and, in turn, this Court is provided with the appropriate guidance in the review of these sentences.

Reversed and remanded.

HOLBROOK, JR., P.J., concurred.

### ADDENDUM

This opinion was submitted for release before our Supreme Court released its decision in *People v Timothy Moore,* 432 Mich 311; 439 NW2d 684 (1989). Therefore, this case was not decided with the panel having the benefit of our Supreme Court's position on the "life or any term of years" sentencing issue addressed in *Timothy Moore.* We

exceeding two-thirds of the maximum *is improper as failing to comply with the indeterminate sentence act. [Id.,* p 690. Emphasis added.]

If a sentence with a minimum exceeding two-thirds of the maximum fails to comply with the indeterminate sentencing act because it is not indeterminate, then certainly a sentence with a minimum (and maximum) which unquestionably is in excess of the natural human life span is likewise not indeterminate.

note, however, that the majority holding in this case is consistent with our Supreme Court's holding in *Timothy Moore.*

SAWYER, J. *(dissenting).* I respectfully dissent.

Defendant pled guilty to second-degree murder, MCL 750.317; MSA 28.549, and first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2). He was sentenced to concurrent terms of 150 to 500 years in prison. I would affirm.

Defendant's convictions arise from an incident occurring on March 4, 1987. Defendant had been at his brother's house and had consumed some alcohol, though it is not clear if he was intoxicated. Defendant borrowed a shotgun from his brother and went outside to shoot at pigeons. While walking through the neighborhood, he came upon the home of the victim and cut through her yard and went to the back of the victim's home. At the back of the home, defendant found a car in the garage and decided to enter the home to secure the car keys so he could drive the car to Detroit to visit his estranged wife.

Defendant broke into the house and went through the kitchen and into the living room, where he found the eighty-year-old victim. Defendant then forced the victim to go upstairs, where he ordered her to undress at gunpoint and then proceeded to rape her. Following the sexual act, defendant shot the victim in the head at close range with the shotgun, killing her instantly. Defendant then took her car and drove to Detroit; he returned the following day, at which time he was arrested.

The majority reaches a conclusion with which I cannot agree: that a sentencing judge cannot impose a sentence "for any term of years" as authorized by statute, but, rather, must limit his sen-

tence to the defendant's life expectancy. While the majority notes that various panels of this Court have grappled with this issue, I am aware of only one published decision of this Court which has reached a conclusion similar to that reached by the majority today. See *People v Oscar Moore,* 164 Mich App 378; 417 NW2d 508 (1987). The *Moore* Court employed an analysis different than that utilized by the majority, though with the same result.

While the majority claims that our Court has failed to reach a consensus on this issue, the majority has found only one case, *Moore* itself, which invalidates the statutorily imposed discretion of the circuit court to impose a sentence of "any term of years," while acknowledging seven published decisions to the contrary. See *ante,* n 2. I would submit that a consensus has formed and that the consensus is to apply the statute as it was written: "any term of years" meaning just that, any term of years.

In its decision, the majority recognized that the Legislature has the power to establish criminal penalties. Yet the majority, dissatisfied with the way the Legislature has exercised that power, refuses to apply the statute as written. Moreover, while the majority acknowledges that a permissible factor in sentencing is the protection of society, it overlooks the fact that the trial court fashioned its sentences recognizing that society must forever be protected from defendant. I strongly disagree with the majority's decision to substitute its judgment for that of the trial court; it was within the trial court's discretion to emphasize the need to protect society in making its sentencing decision.

As noted above, the majority does not rely on the *Moore* analysis in reaching its conclusion; rather, it has created its own theory to invalidate

defendant's lawfully imposed sentences. The majority, relying on *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972), concludes that a lengthy sentence of a term of years violates the indeterminate sentencing statute, MCL 769.8; MSA 28.1080. See also MCL 769.9(2); MSA 28.1081(2). While the majority quotes the latter statute, it ignores the words of that statute. MCL 769.9(2); MSA 28.1081(2) clearly and unequivocally provides that where "the maximum sentence in the discretion of the court may be imprisonment for life or any number or term of years, the court . . . may impose a sentence *for any term of years.*" (Emphasis added.) The Legislature does not in that statute, the indeterminate sentencing statute, or any other statute restrict the trial court's authority to impose a sentence for *any* term of years. The statute is clear and unambiguous, it needs no interpretation or construction. See *Moore, supra* (TAHVONEN, J., dissenting).

The majority argues that the sentences imposed on defendant, 150 to 500 years, violate the indeterminate sentencing statute because they would never allow defendant to be eligible for parole, noting that defendant would have to serve approximately 120 years before becoming eligible for parole at the age of 140 or so. That is, as I understand the majority's decision, such a sentence is, in effect, a determinate sentence according to the majority. This reasoning is without merit. While to say without equivocation that defendant will not live to the age of 140 may underestimate the advances to be achieved by medical science in the years ahead, I accept that no person currently lives to the age of 140 years and there is no solid basis for believing that a person will live so long in the foreseeable future. However, what the majority fails to acknowledge

is that the Legislature may, with the stroke of a
pen, render defendant eligible for parole. It could
do so by either increasing the amount of discipli-
nary credits defendant can earn or by amending
the "lifer law," MCL 791.234(4); MSA 28.2304(4), to
allow a prisoner serving a "term of years" sen-
tence to be eligible for parole after serving ten
years, or any other amount, of his sentence.[1]

The fact that the Legislature has not acted to
ensure that all prisoners, other than those serving
sentences of life without parole, will become eligi-
ble for parole some day indicates to me that the
Legislature sees no need to ensure the parolability
of our most violent felons. Indeed, the majority
states that had "the Legislature chosen to make
the possible penalty for second-degree murder or
first-degree criminal sexual conduct life without
the possibility of parole, we would defer to this
judgment and affirm defendant's sentences." *Ante*
at 142. I would submit that the current sentencing
scheme reflects that the Legislature has, in fact,
provided this possibility. That is, with first-degree
murder, the sentencing judge has no discretion but
to impose a sentence of life in prison without the
possibility of parole. However, for second-degree
murder (and first-degree criminal sexual conduct),
the trial court has unbridled discretion to impose a
life sentence, which includes the possibility of
parole, or any term of years. Such a life sentence
allows a defendant to be eligible for parole after
ten years under the lifer law. Under an "any term
of years" sentence, however, the trial court could
fashion a sentence which allows a defendant to be
paroled before serving ten years, after serving
more than ten years or, as in the case at bar,
perhaps never.

---

[1] For that matter, the Legislature could presumably enact a statute
which would allow all prisoners serving sentences for which parole is
possible to be considered for parole after reaching a certain age.

I would submit that this sentencing scheme reflects a great deal of common sense. While the Legislature has made the determination that a crime such as first-degree murder is so heinous that it always requires that a defendant serve the rest of his life in prison, the sentencing scheme for lesser offenses, such as second-degree murder and first-degree criminal sexual conduct, indicates that the sentencing judge is empowered with the discretion to determine whether the nature of the offense and of the offender requires the defendant to serve the rest of his life in prison, without the realistic possibility of parole, or whether a different term, one which will allow for parole, is appropriate. While the interplay between the various sentencing statutes may require careful reading and the legislative scheme may be inartful, the Legislature, unfortunately, all too frequently expresses its intent in inartfully drafted statutes. While the Legislature perhaps could have organized the sentencing statutes in a clearer and more coherent manner, I believe that the meaning and intent of the sentencing statutes become apparent with careful reading and need no further construction. Simply put, the fact that the statutory draftsmanship may leave something to be desired does not authorize this Court to interpret those statutes as it sees fit. Rather, it is the Legislature's responsibility to reorganize its statutes in a clearer and more concise form if it sees the need to do so.

The majority decries that a lengthy sentence "precludes any likelihood that the Governor, acting through the parole board, will be given the opportunity to exercise discretion," *ante* at 143, and grant parole. My question to the majority is: Why could the Governor not grant clemency and commute the sentence to one which renders the

prisoner eligible for parole and then parole him? If the Governor believes that a prisoner has been rehabilitated and is entitled to be reintegrated with society, he certainly has the power to do that.

I also take issue with the majority's conclusion that defendant's sentences are invalid because they "(2) violate the intent of the Legislature." *Ante* at 144. Aside from my discussion above concerning what the intent of the Legislature might truly be, I believe that the majority's decision itself violates the intent of the people in passing Proposal B. That initiative passed, I submit, because the citizens of our state were tired of seeing serious felons released from prison before they should be. Between the effects of Proposal B and the discretion of a sentencing judge to impose a sentence of "any term of years," it is possible to put vicious criminals such as defendant in prison for life. I submit that this is precisely what the voters intended in passing Proposal B.

Moreover, the majority's decision leaves many issues unresolved. The majority does not tell us which actuarial tables are to be used to determine whether a defendant's sentence exceeds his life expectancy. Nor does the majority tell us whether the peculiar circumstances, such as health, of a given defendant must be taken into account in fashioning a sentence; must a judge consult with an actuary and the defendant's physician before imposing sentence? Indeed, the majority does not even tell us what sentence is acceptable.

Finally, I direct the majority's attention to the fact that the Supreme Court in authorizing us to reverse sentences which shock our judicial conscience, *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), has provided a mechanism by which we can curb any excesses by the trial courts in sentencing. I submit that the power of sentence review established in *Coles* is sufficient to address

this issue. We need not consult actuaries and determine life expectancies; rather, we need only look at the offense and the offender and look into our own consciences and determine if we are shocked by the sentence. While the majority does not tell us if its conscience is shocked by the sentences imposed, mine is not.

For the above reasons, I most vigorously dissent from the decision of the majority.

I would affirm.

### ADDENDUM

After I filed my dissent with the Clerk of the Court, but just prior to its release to the public, the Supreme Court released its opinion in *People v Timothy Moore,* 432 Mich 311; 439 NW2d 684 (1989). While I recognize that a majority of the justices have held that "any term of years" does not mean "any term of years," I remain unconvinced that the reasoning of either the majority in *Timothy Moore* or in the instant case is correct. Rather, I believe that Justice Boyle's dissent represents the well-reasoned view of this issue.

While the doctrine of stare decisis normally would constrain me to concur in the conclusion of the majority, I decided to allow my dissent to be released unchanged since the period for rehearing in *Timothy Moore* had not yet run and it was possible that the Supreme Court would grant rehearing and correct their mistake. Absent that, I would urge the Court to grant leave in the instant case and quickly overrule its decision in *Timothy Moore.*

The sound logic of Justice Boyle's dissent clearly explains why the majority's decision is flawed and further comment by me would be repetitive. Suffice it to say that the majority's

decision in *Timothy Moore* fails to address my concerns discussed in my dissent above.