*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEVIN LEE HANNER,

        Defendant-Appellant.

UNPUBLISHED
January 4, 2024

Nos. 361966; 361968
Cass Circuit Court
LC Nos. 2021-010127-FH; 2020-
        010287-FH

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant appeals as of right his jury trial convictions of six counts of aggravated possession of child sexually abusive material, MCL 750.145c(4)(b); six counts of possession of child sexually abusive material, MCL 750.145c(4)(a); and three counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration of a victim between 13 and 16 years of age). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve life imprisonment for each count of aggravated possession of child sexually abusive material, 4 to 15 years' imprisonment for each count of possession of child sexually abusive material, and life imprisonment for each count of CSC-III, with the sentences to be served concurrently. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences, but we remand for correction of ministerial errors in defendant's judgments of sentence.

## I. BACKGROUND

In 2020, defendant and the victim met through a dating app. At the time, the victim was 14 years old and defendant was 51 years old. Defendant gained the victim's trust through text and social media messages. The victim testified that he told defendant that he was almost 15 years old. Eventually, defendant began meeting the victim in person, picking him up late at night from

---

[1] *People v Hanner*, unpublished order of the Court of Appeals, entered July 7, 2022 (Docket Nos. 361966 and 361968).

a location near the victim's home. On these occasions, defendant took the victim to defendant's apartment.

The victim testified that initially, he and defendant just talked and the victim thought of defendant as someone whom he could trust and in whom he could confide while he was going through a difficult time. Over time, however, defendant began to sexually assault the victim. The victim testified these incidents included multiple sexual acts involving penetration.

One night, the victim decided to run away from home. Defendant had told the victim that he could provide the victim with a place to stay if the victim ever wanted to run away. That night, the victim packed his belongings, and defendant picked him up and drove him to a house that defendant owned. Family members discovered that the victim was missing the next morning and called the police. Officers were able to locate the victim by pinging his cell phone, and they returned the victim to his family.

The victim later told the police that defendant sexually assaulted him, and police officers obtained search warrants for defendant's apartment and defendant's house. During their search, officers seized various computers, phones, and other electronic devices on which they found defendant's messages to the victim, as well as numerous images and videos of children being sexual abused.

Following a jury trial, defendant was convicted and sentenced as previously stated. Defendant now appeals.

## II. JOINDER

Defendant was charged in two separate cases in the Cass Circuit Court. In one case, the prosecutor charged defendant with three counts of CSC-III for his sexual assaults of the victim. In the other case, the prosecutor charged defendant with six counts of aggravated possession of child sexually abusive material and six counts of possession of child sexually abusive material. The prosecution moved to join the cases for trial, and the trial court granted the motion. Defendant argues that he is entitled to a new trial because the trial court erroneously granted the prosecutor's motion to join the cases for trial.

## A. STANDARD OF REVIEW

"To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). Because the question whether joinder is appropriate presents a mixed question of law and fact, we review a trial court's findings of fact under the clearly erroneous standard and we review de novo the legal question whether the trial court properly interpreted and applied MCR 6.120, which is the relevant court rule. *Id*. A trial court's ultimate ruling on a motion under MCR 6.120 is reviewed for an abuse of discretion. *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005).

# B. ANALYSIS

MCR 6.120(B) addresses the permissive joinder of criminal cases after a defendant has been charged, and it provides in relevant part as follows:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

Additionally, MCR 6.120(C) states, "On the defendant's motion, the court *must* sever for separate trials offenses that are *not related as defined in subrule (B)(1)*." (Emphasis added.)

"When construing a court rule, we begin with its plain language; when that language is unambiguous, we must enforce the meaning expressed, without further judicial construction or interpretation." *Williams*, 483 Mich at 232. Under the plain language of MCR 6.120(B)(1), joinder is "appropriate if the offenses are *related*," meaning that the offenses are either "based on (a) the same conduct or transaction, or (b) a series of connected acts, or (c) a series of acts constituting parts of a single scheme or plan." (Emphasis added.) Moreover, although MCR 6.120(B)(2) contains "[o]ther relevant factors" for the trial court to consider when deciding the issue of joinder, those factors do not become relevant to the joinder analysis *unless the offenses are related as defined in subrule (B)(1)*; the plain language of the court rule is clear that it is a *necessary requirement* for joinder that the offenses are "related."

In support of this conclusion, we first look to MCR 6.120(B)(1), which provides that joinder "is appropriate *if* the offenses are *related*." (Emphasis added.) The inverse of this proposition is that *if* the offenses are *not* related, then joinder is *not* appropriate. Indeed, MCR 6.120(C) expressly adopts the inverse proposition of MCR 6.120(B)(1) by requiring that on "the defendant's motion, the court *must* sever for separate trials offenses that are *not related as defined in subrule (B)(1)*." (Emphasis added.) A trial court may not rely on "other factors"—such as overlapping evidence, convenience, or other factors included in MCR 6.120(B)(2)—to justify the

joinder of charges that are not "related" as defined in MCR 6.120(B)(1). See *Williams*, 483 Mich at 231 ("To determine whether joinder is permissible, a trial court *must first* find the relevant facts and then *must decide whether those facts constitute "related" offenses* for which joinder is appropriate.") (emphasis added); *id*. at 237 ("[W]hen the joined counts are *logically related, and* there is a large area of overlapping proof, joinder is appropriate.") (quotation marks and citations omitted; emphasis added); see also *People v Breining*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 357633) (LETICA, P.J., dissenting), p 9 ("[T]he proper test for determining whether offenses may be joined for trial is whether they are related under MCR 6.120(B)(1), not whether the evidence could be offered for a proper purpose under MRE 404(b) in a trial on the other charge.").

Here, defendant's charges for CSC-III and possession of child sexually abusive material did not fall within any of the definitions in MCR 6.120(B)(1) for offenses to be considered "related." The CSC-III offenses involved defendant's sexual abuse of the victim while the child sexually abusive material offenses involved defendant's viewing of abuse committed against other victims. Under the facts and circumstances of this case, there is no evidence of any material connection between defendant's CSC-III offenses and his possession of child sexually abusive material offenses other than that both offenses were committed by defendant and generally involved the sexual abuse of underage boys.

The fact that defendant communicated with the victim using electronic devices, and also viewed child sexually abusive material on electronic devices, without additional facts, does not demonstrate that these offenses were either "based on (a) the same conduct or transaction, or (b) a series of connected acts, or (c) a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1); see also *Girard*, 269 Mich App at 18 (concluding that joinder of the defendant's CSC-I charges and the charges of possession of child sexually abusive material was not erroneous where there was evidence that the defendant viewed child pornography while sexually abusing the complainant); *Williams*, 483 Mich at 235 (stating that mere similarity in character between two offenses does not make them "related.").

Here, there was no showing that defendant used the child sexually abusive material before or during his abuse of the victim, shared the child sexually abusive photos with the victim, took sexually abusive photos of the victim, or that there was some other connection that would demonstrate that defendant's sexual abuse of the victim and his possession of child sexually abusive material were part of the same transaction, a series of connected acts, or part of a single scheme or plan. On this record, there was no material connection between the two types of offense conduct. Here, the trial court should have conducted a more rigorous analysis of the facts before granting the prosecutor's motion to join the cases, and its failure to do so led to the erroneous conclusion that the offenses were related. *Williams*, 483 Mich at 231.

However, even if a defendant shows that joinder was erroneous, reversal is not required unless "after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative" or affirmance " 'appears to the court inconsistent with substantial justice.' " *Williams*, 483 Mich at 243 (citations omitted). It is defendant's burden to demonstrate the requisite prejudice. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999).

Here, defendant has not demonstrated on appeal how the outcome in the trial court would have been different had he been tried in two separate trials because he has failed on appeal to address the application of MCL 768.27a. That statute provides in relevant part that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). Defendant's offenses are "listed offense[s]" for purposes of this statute. MCL 768.27a(2)(a); MCL 28.722(i), (r)(*i*), and (v)(*iv*). "The admissibility of evidence in other trials is an important consideration because '[j]oinder of . . . other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial.' " *Williams*, 483 Mich at 237 (citation omitted; alteration and ellipsis in original). Defendant's brief on appeal does not contain any reference to MCL 768.27a or any analysis of how the evidence of his possession of child sexually abusive material could have been excluded in a trial on his CSC-III charges, or vica versa, had there been two separate trials. Defendant has thus failed to show prejudice, and accordingly, reversal of his convictions is not required.

## III. JURY SELECTION

Defendant next argues that he is entitled to a new trial because the trial court improperly denied his challenge for cause to excuse a potential juror, which forced defendant to use a peremptory challenge to excuse the juror, and defendant exhausted all his peremptory challenges before the jury was seated.

## A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's ruling on a challenge to a juror for cause based on juror bias. *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000). "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *People v Korkigian*, 334 Mich App 481, 489; 965 NW2d 222 (2020) (quotation marks and citation omitted). However, if a defendant "shows that a prospective juror falls within the parameters of one of the grounds enumerated in MCR 2.511(D), the trial court is without discretion to retain that juror, who must be excused for cause." *People v Eccles*, 260 Mich App 379, 383; 677 NW2d 76 (2004).

## B. ANALYSIS

"[A] criminal defendant has a constitutional right to be tried by an impartial jury . . . ." *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). The rules for impaneling a jury are set forth in MCR 2.511. Challenges for cause are addressed in MCR 2.511(D), which provides in relevant part as follows:

> The parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry. It is grounds for a challenge for cause that the person:
>
> * * *
>
> (2) is biased for or against a party or attorney;

(3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;

(4) has opinions or conscientious scruples that would improperly influence the person's verdict[.]

Defendant moved to excuse a juror for cause after the juror indicated that, if he were defendant, he might not want him as a juror on his jury because he worked as a Children's Protective Services (CPS) investigator. However, defendant did not show that the juror was biased or had a state of mind that would interfere with his ability to render a just verdict. The trial court questioned the juror about his ability to be fair; the juror stated that he had no knowledge of, or opinion about, the case or any preconceived notions about defendant; and he indicated that he understood that he must rely on evidence presented in order to render a just and fair verdict. Although defense counsel questioned the juror's ability to be fair considering his answer to whether he would want the juror on his jury as a defendant, the trial court thoroughly vetted the question of the juror's actual bias, and the juror assured the trial court that he could be fair and impartial. In response to defendant's challenge for cause, the trial court found that the juror indicated "that he thinks he could make his decision based on the evidence" and that "he could be a fair and impartial juror in this case."

"This Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *Williams*, 241 Mich App at 522. The juror's job was not, by itself, a sufficient reason to excuse him for cause. See *People v Walker*, 162 Mich App 60, 64-65; 412 NW2d 244 (1987) ("The fact that juror Mayotte was a police officer is not of itself sufficient to warrant an inference of bias."). If a juror expresses a strong opinion about a matter at issue in a trial, as well as an expressed inability to set aside that opinion, it is a cause for removal for reasons of bias. *Poet v Traverse City Osteopathic Hosp*, 433 Mich 228, 237, 238, 249-250, 252 n 20; 445 NW2d 115 (1989). Defendant has not shown that this occurred in this case. The juror did not express strong feelings that reflected an inability to be impartial. He simply stated that his job *could* create bias, but he then said that he had no bias and that he could render a fair and impartial verdict. "A juror who expresses an opinion referring to some circumstance of the case which is not positive in character, but swears he can render an impartial verdict, may not be challenged for cause." *People v Roupe*, 150 Mich App 469, 474; 389 NW2d 449 (1986).

For these reasons, the trial court did not err when it denied defendant's challenge for cause. Thereafter, defense counsel was free to use a peremptory challenge to excuse the juror, which he did, and, when his challenges were exhausted, defense counsel expressed satisfaction with the jury. Defendant is not entitled to relief on this claim.

IV. SENTENCING

Finally, defendant argues that he is entitled to resentencing because the trial court's upward departure sentences of life imprisonment for the CSC-III convictions and for his six convictions of aggravated possession of child sexually abusive material constituted an abuse of discretion.

## A. STANDARD OF REVIEW

We review a departure sentence for an abuse of discretion to determine whether the sentence was reasonable. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). We determine whether a sentence is reasonable by taking into account the sentencing guidelines and also determining whether the sentence is proportionate to the seriousness of the offense and the offender. *People v Steanhouse*, 500 Mich 453, 471, 474-475; 902 NW2d 327 (2017).

## B. ANALYSIS

As a fourth-offense habitual offender, defendant had to be sentenced to a minimum term of at least 25 years in prison. A trial court is not bound to select a minimum sentence that is within the range provided under the sentencing guidelines, and this Court's review of a decision to depart from the guidelines is for reasonableness. *Lockridge*, 498 Mich at 365. If a trial court does not find that the sentencing guidelines are proportionate to the offense and the offender, the court must "justify the sentence imposed in order to facilitate appellate review." *Steanhouse*, 500 Mich at 470 (quotation marks and citation omitted). Some examples of factors to consider when "determining whether a departure sentence is more proportionate than a sentence within the guidelines range" include (1) "whether the guidelines accurately reflect the seriousness of the crime," (2) "factors not considered by the guidelines," (3) "factors considered by the guidelines but given inadequate weight," (4) "the defendant's misconduct while in custody," (5) "the defendant's expressions of remorse," and (6) "the defendant's potential for rehabilitation." *People v Dixon-Bey*, 321 Mich App 490, 525 & n 9; 909 NW2d 458 (2017) (quotation marks and citation omitted).

Here, the trial court explained that the sentencing guidelines did not adequately take into account the need to protect society from someone with defendant's history of repeated child sexual abuse, as well as his possession of thousands of child sexually abusive images involving children as young as toddlers, some of which included children who were bound or unconscious. The court further observed that defendant had shown no remorse for any of his conduct and, rather than attempting to benefit from rehabilitation, he has instead become "treatment savvy," so that he can appear to comply with treatment while continuing to offend. The trial court further observed that defendant fled to Texas while out on bond in this case and that, when he was finally located, he was on his way to pick up a young boy from a nearby school.

Contrary to defendant's assertions, the trial court specifically stated the ways in which it intended to depart from the sentencing guidelines because they failed to consider various factors that the trial court, in its discretion, deemed important when tailoring the sentence to the seriousness of the offenses and to this offender. The trial court thoroughly explained why the sentencing guidelines failed to account for defendant's past conduct, his conduct while the case was pending, and the seriousness of the offenses in this case. The court further emphasized that the guidelines did not adequately consider the many opportunities that defendant had for rehabilitation but that he has chosen not to make any sincere effort to change his behaviors. For that reason, and considering his long history of abusing children, as well as the amount and depravity of the abusive material defendant collected over many years, the trial court expressed that it is extremely likely that defendant will continue to victimize children in the future. Defendant has not demonstrated on appeal that the trial court abused its discretion in sentencing defendant.

We do hold, however, that defendant is entitled to remand for correction of his judgments of sentence. Although the trial court stated at sentencing that it was sentencing defendant to life imprisonment for his CSC-III convictions as well as the six convictions for aggravated possession of child sexually abusive material, on the judgments of sentence, defendant's sentences for these convictions are stated as 999 years in prison. A trial court violates the indeterminate sentencing scheme when it sentences a defendant to serve a minimum term of years that clearly exceeds the normal human life span. *People v Legree*, 177 Mich App 134, 142-144; 441 NW2d 433 (1989). Accordingly, we remand for the trial court to correct the judgments of sentence to state that defendant's sentence for his convictions on these counts is life imprisonment.

Defendant's convictions and sentences are affirmed, but we remand for the ministerial task of correcting the judgments of sentence and transmitting the corrected judgments to the Department of Corrections. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick